St. Joseph Transfer and Storage Co., Respondent, v. Employers Indemnity Corporation, Appellant.*

Kansas City Court of Appeals. January 6, 1930.

222

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3235, p. 1195, n. 96; Liability Insurance, 36CJ, section 102, p. 1112, n. 19, 20; section 109, p. 1116, n. 4.

*Groves & Watkins, Maurice Murphy, Pross T. Cross* and *Mosman, Rogers & Buzard* for respondent.

*Cowgill & Popham* and *Eastin & McNeely* for appellant.

ARNOLD, J.—This is a suit on an insurance policy. Both plaintiff and defendant are corporations organized and existing under the laws of Missouri, the former, as such, is engaged in the transfer business at St. Joseph, Missouri, and the latter with its principal office in Kansas City, Missouri, in the business of writing insurance for

employers against the hazards of liability under claims of injured employees.

On October 1, 1925, defendant issued to plaintiff its policy of insurance whereby defendant indemnified plaintiff against loss resulting from damages assessed by law against the assured on account of bodily injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any employee of the assured, while engaged in certain operations and at certain places designated in the policy, from accidents occurring while the policy was in force. It was recited in the policy that the insurer agreed to defend in the name of and on behalf of assured, any suits, even if groundless, brought to enforce claims covered by the policy unless and until the corporation (insurer) should elect to effect settlement thereof. The corporation also agreed to pay irrespective of the limits of liability therein expressed, all costs incurred by the corporation in investigation and negotiations for settlement of claims covered by the policy and in the defense of any suit thereon; and all costs taxed against the assured in any such suit or legal proceeding defended by the corporation and all interest accruing after entry of judgment therein, upon such part thereof as should not be in excess of such limits; and to reimburse the assured irrespective of such limits, for expense incurred in providing for such surgical relief as might be imperative at the time of any accident covered thereunder.

It was provided that the corporation's liability under the policy for loss on account of bodily injury to or death of any person is limited to $5,000, and, subject to the same limit for each person, the corporation's total liability for loss on account of bodily injuries to or death of more than one person from any one accident is limited to $10,000. However, the limit of liability was amended so that under the whole policy the limit of liability for injury to or death of any one person was $10,000 and the total liability was $20,000.

It was provided that assured should at all times lend to the indemnity corporation all cooperation and assistance (except in a pecuniary way) within its power and whenever requested by the corporation should aid in securing information and evidence and the attendance of witnesses, and in effecting settlements and prosecuting appeals; but the assured should not voluntarily assume any liability either before or after an accident, nor, without written consent of the indemnity corporation previously given, incur any expense or settle any claim, except at its own cost, nor interfere in any negotiations for settlements or in legal proceedings conducted by the indemnity corporation on account of any claim; except that the assured, at the time of any accident covered by the policy, might provide, at the cost of the indemnity corporation, such immediate

surgical relief as might be imperative. It was also provided that no action should lie against the indemnity corporation, to recover for any loss under the policy, unless brought by the assured or its legal representative to recover money actually paid in good faith by the assured in satisfaction of a final judgment after actual trial of the issues.

While the policy was in force one John Hickok, an employee of plaintiff, sustained certain injuries resulting in the loss of one of his legs. The accident occurred while he was acting within the scope of his employment, and he brought suit against plaintiff herein.

A letter was introduced in evidence which was written by Cowgill & Popham, attorneys for the indemnity corporation, which was as follows:

"Kansas City, Mo., April 24, 1928.
"St. Joseph Transfer & Storage Co.,
"3rd and Charles Sts.,
"St. Joseph, Mo.
Re: Hickok, pending at Independence, Mo.
"Gentlemen:

"We have not been favored with any definite reply to our recent communication of inquiry and advice relating to the fact that this case is set for April 30, 1928, at Independence, and the question of whether your company is desirous of additional and personal representation looking to the question of possible excess liability.

"The Employers Indemnity Corporation and the writer for them and in your behalf are making preparations for this trial and we would like to be definitely advised in the premises. Incidentally, it is well for all of us to give due consideration in advance to the possible court-room danger of a case involving the loss of a major limb and the possibility of large excess damages. We are willing, of course, to exert every human effort in giving your company the strongest defense possible, and while we are not requesting it, we feel that a pre-trial suggestion should be made to your company that a settlement might be worked out wherein your company would prefer to pay some top-percentage in protection of your excess danger. If you care to discuss this feature of the matter or have us in the interest of all concerned make an extraordinary effort to get the parties together and settle the case, advise.

"An expression of your position in regard to all these matters, will be very greatly appreciated."

Mr. Niedorp, president of plaintiff company, testified that he was advised by the insurance company that Mr. Hickok's suit was for an amount in excess of the amount of the insurance and it was suggested to him that he interview his own attorney concerning the case although the insurance company had taken charge of the de-

fense. Mr. Niedorp, on behalf of the transfer and storage company, asked Mr. Watkins, an attorney of St. Joseph, to go to Independence, Missouri, where the case was set for trial. A jury was selected to try the case and the attorneys for the insurance company announced that defendant desired to have the trial of the case postponed that they might try to find Mr. Miller who was plaintiff's (defendant there) foreman at the time Hickok was injured. Mr. Niedorp and Mr. Watkins then met Mr. Popham in the latter's office and talked the case over.

Mr. Niedorp testified that the attorneys for the indemnity corporation said:

"This is a very serious case owing to the nature of the injury. They will get a very big judgment against you and you better try to settle the case if you can and so—well, won't you think you folks better see Mr. Pross Cross and Mr. Rogers to see if we can settle this case."

That Mr. Watkins said: "Well, hadn't you better try to settle it?" and Mr. Popham answered: "No, we are willing to try it and we can't afford to show a white flag in the matter and you go up there and see what yau can do." Mr. Niedorp and Mr. Watkins than had a conference with Mr. Cross and Mr. Rogers, attorneys for Hickok, at which Mr. Hickok was present. They asked how much insurance the defendant had and were informed that they carried $10,000 insurance and $600 already had been paid in hospital bills, expenses, etc., leaving a balance of $9,400, and then Mr. Cross offered to settle for that amount. The president of the transfer company, Mr. Niedorp, and Mr. Watkins, attorney for the company, then took the matter up with Mr. Popham who said:

"Well, I don't know, I know what the insurance company will do, but we do not know about you. The insurance company won't pay more than seventy-five per cent."

Mr. Niedorp replied, "Well, the insurance company was paid for $10,000—I don't think that is fair." They then talked the matter over with Mr. Robertson, an adjuster for the insurance company, who said:

"Well, I understand you have a pretty serious case here, very serious liability here. . . . Let's make this short as I have to go out soon and play golf. You have a policy for $10,000, we will pay $6,000 on that."

Mr. Niedorp said, "What do you mean?" Mr. Robertson replied, "You pay the balance." Mr. Niedorp said "We have a $10,000 policy" to which the adjuster replied, "You know we never pay the full amount . . . that is all we will pay." Mr. Niedorp said—

"Well, we paid for $10,000, and we can't settle the matter for less than $10,000 and I expect you to take care of us."

Further, the adjuster said:

"It is all agreed that they might get a judgment for $15,000, $20,000 or $25,000, which would you rather do, pay that or take $6,000?"

Mr. Niedorp and his attorney then withdrew from the conference and Mr. Watkins said to his client: "We better contribute $2,000." They finally returned to the adjuster's office and told him they didn't want to do it and did not think it was right. Later, Mr. Watkins suggested his client would give $2,500. In this conversation the adjuster said there would be a judgment for $25,000 and added "You all seem to agree on that."

Attorneys for Hickok finally agreed to settle for $9,200, and the adjuster for the indemnity corporation agreed to pay $6,000 of this amount and stated that the assured could pay the balance if it wanted a settlement; otherwise, the indemnity corporation would try the case. The adjuster and the attorneys for the indemnity corporation stated that $9,200 was a remarkable settlement owing to the class of men on the jury, and if the transfer and storage company could settle for that amount, that was the thing to do. The claim then was settled. Plaintiff paid $2,600 to Hickok and his attorneys and the indemnity corporation paid $6,600 and took a release which is as follows:

"Receipt and Release.

"The undersigned for and in consideration of ninety-two hundred ($9200) dollars the receipt whereof is hereby acknowledged, does hereby release and discharge St. Joseph Transfer & Storage Company and all other persons, firms or corporations of and from all claims for damages of every kind and character whatsoever, which the under signed has or may have arising out of or by reason of an accident which is claimed to have happened at or near Great Western R. R. premises, St. Joseph, Missouri, while helping load a tank, sustaining the loss of his leg and other injury on or about March 6, 1926, and it is expressly agreed and understood that all agreements and understandings between the parties are embodied herein, and that this release covers all injuries and all their effects and results, whether developed or undeveloped, and all expenses of every nature. The statements and agreements herein are not merely recital but are contractual in character.

"In witness whereof, the undersigned has hereunto set his hand and seal this 1st day of May, 1928. $6,600 of the within consideration has been paid by draft and claimant is to receive remaining $2,600 from St. Joseph Transfer & Storage Co. Pending suit at Independence to be dismissed at cost of defendant with prejudice.

"JOHN A. HICKOK, (Seal)
Claimant.

"Approved and all attorney's liens waived:

"PROSS T. CROSS,
"MAURICE P. MURPHY,
"Counsel for claimant."

On cross-examination Mr. Niedorp testified that it was agreed that his company was to pay $2,600 upon the settlement. He was asked if he said a word to the adjuster to the effect that he expected to get a nickel of the $2,600 back. He answered that he said it was a hold up; that he had insurance for $10,000.

Later, this suit was brought by the transfer and storage company against the indemnity corporation upon the policy of insurance upon the theory that plaintiff had suffered a loss covered by the policy in the sum of $9,200, all of which should have been paid by defendant according to the terms of the policy, and that plaintiff had been forced to pay out $2,600 on the claim because of the failure and refusal of the defendant to pay said sum. There was a judgment for plaintiff for $2,600, together with a verdict for damages in the sum of $84.50 and attorney's fees in the sum of $1,000, on account of vexatious refusal to pay. A motion for a new trial was filed and overruled and defendant has appealed.

Appellant contends the petition states no cause of action and the evidence shows no right of recovery. If the petition be declared insufficient, and the evidence showed that plaintiff was entitled to recover, justice would require that the judgment be reversed and the cause remanded so that plaintiff could amend the petition, unless the amendment would constitute a departure. In this situation it is not necessary that we pass directly upon the question of the sufficiency of the petition to state a cause of action, and we pass immediately to the question as to whether or not there was any substantial evidence to support the verdict.

Plaintiff claims the settlement of the case fixed the amount of plaintiff's loss within the policy limits and constituted an agreement that there was no defense to the suit brought by Hickok, and that the settlement also waived the provision of the policy that recovery could only be had for money paid out in satisfaction of final judgment after actual trial of the issues. It is also claimed that the agreement by plaintiff to pay $2,600 in order to procure a settlement of the suit brought by Hickok was without consideration, for the reason that it was already the duty of the defendant to pay the full amount of the liability up to $10,000.

It is undoubtedly true that the payment by plaintiff was without consideration if, at the time of payment, the indemnity corporation had already become absolutely liable for the payment of $9,200. It is also true that if the indemnity corporation had settled the Hickok suit for $9,200 without any agreement with the plaintiff, this would have amounted to a waiver of the provision in the policy that the

228

plaintiff could , ily recover money paid out in satisfaction of a final judgment and vould have rendered its liability absolute. But the defendant did .ot settle the Hickok suit for $9,200. It was settled by defendant an plaintiff upon an agreement that $6,600 would be paid by defe· .lant and $2,600 would be paid by plaintiff. Both parties had a ri nt to enter into a contract of settlement which would be in accord ad satisfaction of the original contract of insurance. While it m .y be true that by the contract of compromise the defendant waive. the provisions of the policy whereby it had a right to insist that .he amount of the liability be fixed by a judgment and whereby it was provided that plaintiff could only recover the amount paid out in satisfaction of a final judgment, yet the plaintiff may waive provisions of the insurance contract as well as defendant, and by the contract of compromise it waived that provision of the contract whereby the defendant could discharge its obligations only by the payment of the full amount of the liability up to $10,000.

Plaintiff's position is not entirely unsupported by authority. In the case of Mendota Electric Co. v. New York Indemnity Corporation, 211 N. W. 317, the Supreme Court of Minnesota held that if the insured is clearly liable, and the insurer, after undertaking the defense of the action, refuses to make prudent settlement unless the insured contributes a portion of the amount required by the settlement, the refusal must be made in good faith and upon reasonable grounds for the belief that an excessive amount was demanded for the settlement. The court said that where the insured takes charge of the defense and has the exclusive right to settle, it is possible to coerce the insured into contributing part of the sum required to effect a settlement in order to avoid the risk of recovery in excess of the indemnity specified in the policy; that good faith and fair dealing are correlative obligations, and the insurer owes to the insured some duties in the matter of the settlement of claims covered by the policy. It was stated in the opinion that it was a fair inference that there was no serious question about the employee's right to recover substantial damages from the assured. It was also held that the allegation in the petition that the injuries were sustained under circumstances clearly creating liability upon the part of the plaintiff for damages was a good allegation of fact.

In Brown & McCabe, Stevedores, Inc. v. London Guaranty & Accident Co., 232 Fed. 298, the judge for the District Court of the United States for Oregon held that a petition stated a good cause of action wherein it was alleged that one of plaintiff's employees was injured; that defendant insurance company investigated the claim, ascertained there was a liability and that the injured party would settle for $3,000, which was $2,000 less than the face of the policy; that the insurance company thereupon notified plain·

tiff of the offer and demanded that it pay $1,500 of the loss and stated that if plaintiff refused it would permit the pending action to proceed to trial which would necessarily result in a judgment in excess of the face of the policy so that assured would ultimately be compelled to pay more than $1,500; that plaintiff refused, the case was tried, and the employee recovered a judgment for $12,000; that the insurance company thereupon paid the face amount of the policy with costs and refused to pay more. The court said this was a case where the insurance company attempted "to hold up the assured and make it pay $1,500 or one-half of the loss, and, because it did not do so, suffered the action to proceed to judgment for more than double the face of the policy." Judge Bean, in his opinion, stated that there were no authorities directly in point. We think that he was in error in this conclusion, as we will hereinafter demonstrate. The editor of American Law Reports, in commenting upon this decision, said: "No authorities are considered, and whether the decision is good law is questionable." [34 Am. L. Rep. 752.]

The Supreme Court of New Hampshire holds that a company that insures an employer against liability for negligent injuries to an employee is liable for the injury done to the injured employer by its negligent failure to settle a claim presented against the employer when an offer of settlement has been tendered. [Douglas v. U. S. Fidelity & Guaranty Co., 127 Atl. 708, 81 N. H. 371; Cavanaugh v. Assurance Corp., 79 N. H. 186.] To the same effect see G. A. Stowers Furniture Co. v. Am. Indemnity Co. (Tex.), 15 S. W. (2d) 544.

Other cases are cited by plaintiff which hold the insurance company may be held liable for its negligence in defending the action and for failing and refusing to defend the action, and that if it fails to defend the action, this constitutes a waiver of the provision that the assured may not settle without the consent of the insurance company, and in such case the assured may recover from the insurance company the amount paid out under a settlement made in good faith. We do not consider any of these authorities in point and therefore will not discuss them further.

The following authorities hold that the insurance company is not liable to the assured for its refusal to accept an offer of settlement for an amount within the limit of the policy, even though upon a trial, the employee recovers a judgment in excess of the amount of the policy. [Streat Coal Company, Inc. v. Insurance Co., 237 N. Y. 60; Schencke Piano Co. v. Philadelphia Casualty Co., 216 N. Y. 662; Neuberger v. Ins. Co. (Ala.), 89 So. 90; Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574. 43 Atl. 503; Kingan & Co. v. Md. Casualty Co. (Ind.), 115 N. E. 348; Schmidt v. Travelers Ins. Co., 244 Pa. 286; New Orleans,

etc., R. R. Co. v. Md. Casualty Co., 114 La. 153; Cleveland Wire & Spring Co. v. Assurance Corp., 6 Ohio App. 344; Stowers Furn. Co. v. Am. Indemnity Co., 295 S. W. 257; Wynnewood Lbr. Co. v. Ins. Co., 173 N. C. 269; Davison v. Md. Casualty Co., 197 Mass. 167; Wis. Zinc Co. v. Fidelity & Dep. Co., 162 Wis. 39.]

Some of these cases hold the insurance company is not liable even though, at the time it refused to settle, the agents of the company in charge of the defense expressed the opinion that if the case was tried it would probably result in a judgment in excess of the amount of insurance. In the case of Neuberger v. Ins. Co., supra, the insured carried liability insurance in the sum of $5,000. One who was injured by the insured's automobile recovered judgment against him in the circuit court in the sum of $6,500 and offered to compromise the judgment for $5,000. The insurance company refused to accept the offered compromise and threatened to appeal from the judgment unless the insured paid $500 and the costs of suit toward the settlement. The insured paid the amount demanded under protest and then brought suit against the insurance company upon the theory that the payment had been made under coercion. The Supreme Court of Alabama held the defendant was not liable. The court held the institution of the suit created no other duty upon the part of the insurance company than to elect to settle or defend; that, by electing to defend and by defending, the insurance company discharged its full duty toward the appellant, and that liability could not, in the absence of fraud, be predicated upon the fact that defendant had elected to defend rather than to settle.

It has been held that when the nature of the injury is such that it is likely that the judgment will be in excess of the amount of the insurance and the insurance company refuses to settle, then the insured may settle that part of the claim in excess of the liability of the insurer without the consent of the insurance company, notwithstanding the provision in the policy that the insured might not settle without the written consent of the company. [General Acc. etc., Corp. v. Telephone Co., 175 Ky. 96.] The cases holding the insurance company liable for negligent failure to settle when a settlement may be made for an amount covered by the policy, and that the company is liable if it coerces the plaintiff into contributing toward such settlement, proceed upon the theory that good faith and due care require an insurance company, after taking over the defense of the action, to look after the interests of the assured to the same extent that an agent must guard the interests of his principal, and that a trustee must guard the interests of his *cestui que trust*. We fully agree that the insurance company must act with due care; but it would be a perversion of the purpose of the provisions in the policy permitting the insurance company to control the

defense and settle, or refuse to settle, to the exclusion of the assured, to hold that under these provisions the insurance company must consult the interests of the assured to the exclusion of its own interest. It is obvious these clauses were inserted for the protection of the insurance company by placing it beyond the power of the assured to conduct the litigation, or make a settlement, whereby the interest of the insurance company would be sacrificed. Good faith requires that the insurance company do nothing to the prejudice of the assured which is not beneficial to itself; but when the interests of the insurer and the assured conflict, then there is no duty to the assured except that for which it has expressly contracted. This was expressly held in the cases of Davison v. Md. Casualty Co., supra, and Wisconsin Zinc Co. v. Fidelity & Deposit Co., supra.

This is not a case wherein the liability was clear. It is true that the attorneys and the adjuster for the indemnity corporation were of the opinion that the judgment would be from $15,000 to $25,000. This expression of opinion was based partly upon the fact that the employee had lost his leg and partly upon the personnel of the jury which had been selected. At most the extent of the damages was a mere opinion. The record does not disclose that the jury was bound to return a verdict for plaintiff nor that the verdict would be as much as $10,000, if they did find for plaintiff. The insurance company did not have to concede full liability upon its own part in order that the assured be protected against any contingent liability whatsoever; because the fact of liability was not yet established, nor could it be known in advance how much damages the jury would allow should liability be determined. If the evidence showed the case was one where, under the conceded facts, and upon settled principles of law, it would have been the duty of the court to direct a verdict for plaintiff for an amount in excess of the amount of the insurance, then we would be inclined to hold that the insurance company acted in bad faith in refusing to settle for an amount within the limits of the policy, and that if it settled for such an amount by compelling the assured to contribute to that settlement in order to avoid liability in excess of the amount of the insurance, then such a payment by the assured would be without consideration,

In this case there was grave danger that the insurance company would be held liable for $10,000, and that the assured would also be held liable for $5,000 to $15,000. It was not certain that either would be held liable, nor was the amount for which either would be ultimately held definitely ascertained, even if a verdict for plaintiff was conceded. Therefore, both parties entered into a contract to fix the amount of that liability in the sum of $9,200. The contingent liability in a greater amount was the consideration to each for entering into such a contract. Admitting that the provisions of the policy requiring that the amount of liability be fixed by a final

judgment were waived by the insurance company, yet they were waived for a consideration voluntarily paid by the assured. Plaintiff cannot insist upon the contract of settlement for the purpose of establishing a waiver, but reject it for the purpose of disclaiming its liability for the payment of the $2,600. By attempting to enforce any part of the contract plaintiff accepts the whole contract *cum onere*.

The assured has escaped a large contingent liability by the payment of a comparatively small sum of money. It would be bad policy to· lay down a rule that an assured could recover his contribution toward a settlement whereby liability was fixed at an amount covered by his liability insurance. If such a rule should be announced as the law of Missouri the insurance companies would not enter into such settlements. This would result in causes going to trial which otherwise would have been settled, and in a large number of cases the assured would be compelled to pay far more than would have been necessary had he been permitted to enter into a voluntary contract whereby he bore a part of the costs of settlement. It will not do to say that in such event he could recover the amount from the insurance company upon an allegation that the liability was clear and the refusal to settle constituted negligence upon the part of the insurance company. In nearly all the cases which have reached this court the cause has been submitted to the jury because there was some evidence which, if believed by the jury, would have resulted in a verdict for defendant. We could not hold in such cases that refusal .to settle was negligent unless we assumed, as the appellate courts of New Hampshire and Minnesota have assumed, that it is the duty of the insurance company to shut its eyes to its own interests and seek only the protection of the assured when an offer of settlement is made. We have already pointed out that . we think this is contrary to the plain purpose of the provisions of the policy. The judgment is reversed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.