Southern Farm Bureau Cas. Ins. Co. *v.* Hardin.

5-2480                                          351 S. W. 2d 158

Opinion delivered October 16, 1961.

[Rehearing denied December 11, 1961.]

1012

*Cockrill, Laser & McGehee,* for appellant.

*S. Hubert Mayes* and *S. Hubert Mayes, Jr.* and *Hout & Thaxton,* for appellee.

SAM ROBINSON, Associate Justice. Appellee, Raymond Hardin, while driving his automobile along a public highway in Jackson County, observed a grass fire that was endangering a neighbor's home. Hardin stopped his automobile, leaving it parked on the hard-surface portion of the highway, and went to help put out the fire, the smoke of which was blowing across the highway. V. O. Calhoun, a resident of Woodruff County, traveling on the highway, drove his automobile into Hardin's car. Calhoun was severely injured and his automobile was damaged in the sum of $1,190. Hardin had liability insurance with appellant, Southern Farm Bureau Casualty Insurance Company. The insurance company assumed control of the litigation, which it had a right to do under the terms of its policy, and retained the law firm of Yingling & Yingling at Searcy in White County to defend the action.

The policy of liability insurance issued by appellant insurance company to Hardin had the limit of $5,000 for injury to one person and $5,000 for property damage. Hardin realized that he did not have much insurance protection so far as personal injury was concerned. He further realized that the case was pending in Woodruff County, where Mr. Calhoun lived; that Calhoun was well liked and respected in that county and had received serious injuries. He also realized that Calhoun had a good cause of action. He therefore sought to prevail on appellant insurance company to make an effort to settle the case within the policy limits, but he was unable to get the insurance company to take any action in that respect. Therefore for his own protection he engaged the services of Mr. W. J. Dungan, an attorney of Augusta, in Woodruff County. Mr. Dungan realized the danger of the case

and discussed settlement with the attorneys for the plaintiff, who agreed to accept some amount within the policy limits if the insurance company would make a settlement of that kind. Mr. Dungan conveyed that information to the insurance company, but, although representatives of the company considered the case had a settlement value of about $2,500, they made no offer to the plaintiff at all to settle the case for any amount.

The case proceeded to trial; after the jury had been out for some time they returned for further instructions and at that time disclosed that they were divided 8 to 4. The jury again retired, and Mr. John Eldridge, attorney for the plaintiff, then told Mr. Ed Yingling that he would settle the entire case, personal injury and property damage, for $4,000. Mr. Yingling conveyed this information to Mr. Meacham, agent for the insurance company, who at the time was sitting in the court room. However, he had not been in the court room during the trial and had not heard the testimony. He declined the offer and made no counter offer. Soon thereafter the jury returned a verdict for the plaintiff in the sum of $25,000 for personal injuries, less 15% attributable to the negligence of Calhoun. The insurance company took the necessary steps to effect an appeal to the Supreme Court. In the meantime, Mr. Hardin, after conferring with counsel, reached the conclusion that there was not much chance of reversal. He therefore began strenuous negotiations in an attempt to settle the matter and save as much as possible. He succeeded in getting the plaintiff to accept $15,000 in settlement of the judgment. Appellant insurance company paid on the judgment the amount named in the policy for personal injury and property damage. Mr. Hardin paid the balance of $8,810. Later he filed suit against the insurance company for the amount that he was compelled to pay on the judgment, on the theory that the insurance company was negligent or did not act in good faith in failing to settle the case within the policy limits. This case was tried in the Pulaski Circuit Court, resulting in a verdict for

Hardin against the company in the sum of $8,810. From this judgment the insurance company has appealed.

First, appellant contends there is no substantial evidence to support the jury verdict. At the trial of the case the plaintiff had proved severe injuries plus the property damage of $1,190. The case was being tried in his home county, where he was well respected, and he was represented by able lawyers of that community. He sought judgment in the sum of $33,000, and although the insurance company stood to lose only $5,000 on a personal injury judgment, the policyholder stood to lose over $25,000. There is sharp dispute in the testimony as to just what occurred when Mr. Ed Yingling told Mr. Meacham that Mr. Eldridge had offered to settle the case for $4,000 while the jury was out. Mr. Meacham testified: "When Mr. Ed [Yingling] mentioned that, I asked him what he thought and Mr. Ed said 'Well it has gone better than I anticipated. The State police made a much better witness than I anticipated and I feel that there is a good possibility that we will get a defendant's verdict' and I asked him about what he thought about the four thousand and he said in his opinion he would not pay the four thousand."

On the other hand, Mr. Hardin testified that at the time Mr. Yingling spoke to Mr. Meacham about the settlement, there were only three of them in the court room, and his version of what transpired is as follows: When the jury retired after receiving additional instructions by the court, "I immediately went back in the court room where Mr. Meacham was and sat down by his side and told him I thought we had lost the case because I recognized that juror to be one of the minority, and I told him if he does agree with the other jurors we were lost. I told him I thought we ought to settle and he said it was too late to settle now. While we were sitting there arguing the jury went back out and I would say fifteen minutes after the jury went out, Mr. Ed Yingling, the elder attorney . . . came over and sat down in the court room. The court room was vacant, only three of us, and

he sat down and Mr. Gerald Meacham was on the right and Mr. Yingling sat down on his right and that left him between us, and he said 'John said he would settle this case for $4,000 right now and dismiss the jury' . . . Mr. Meacham said 'No, we can't do that' so he [Yingling] got up and left and after he left I immediately began to argue. I gave the reason I thought he ought to settle that perhaps the fact I was out of the county and Mr. Calhoun was a native of Woodruff County and able represented by Mr. Eldridge and his brother and at one time he [Meacham] said 'Well, we haven't got anything to lose—go ahead and let the jury have it—we have got nothing to lose—any way it goes we can't lose much more than the limits'. I got up and immediately left and in some hour or so the jury came out with their decision.''

According to the undisputed evidence plaintiff had made an offer to settle for $4,000 and although the insurance company had placed an evaluation on the case of around $2,500, they made no effort or counter offer whatever to bring about a settlement. Of course, Mr. Meacham thought that under the terms of the policy the insurance company could lose on account of the personal injury only $1,000 in addition to the $4,000 plaintiff was offering to accept in settlement. In the case at bar the jury could have found that the insurance company was willing to gamble the $1,000 against the $4,000 that the plaintiff had offered to accept in settlement, and wholly disregarded the damages that Hardin might sustain by reason of the failure to settle. Mr. Ed Yingling did not testify in the case because he had been in a terrible automobile accident, but it will be noticed from Mr. Meacham's testimony that Mr. Yingling did not say he would make no offer at all of a settlement; he merely said he would not recommend the payment of the $4,000. As to just what occurred in this conversation we have only the testimony of Meacham on the one hand and Hardin on the other. In these circumstances it was a jury question as to whether the insurance company was negligent or

failed to act in good faith by not attempting to reach a settlement within the limits of the policy.

Appellant complains of the plaintiff's instruction No. 1, which told the jury, among other things, that it could consider whether the defendant, Southern Farm Bureau Casualty Insurance Company, failed to properly investigate the case. Whether the insurance company properly investigated the case was a question of fact and there is some evidence to the effect that a proper investigation was not made to determine the full extent of Calhoun's injuries.

Appellant further argues that the trial court erred in giving plaintiff's instruction No. 3, which, among other things, told the jury that it is the obligation of the defendant insurance company to exercise due care and strict performance and utmost good faith. This was a proper declaration of the law. *Southern Farm Bureau Casualty Ins. Co.* v. *Parker,* 232 Ark. 841, 341 S. W. 2d 36.

The jury returned a verdict in the sum of $8,810. To that amount the court added interest from the time that Hardin paid Calhoun a portion of the judgment. Appellant argues that this was error; that the action was one in tort, and that the interest should begin from the date of Hardin's judgment against the insurance company. We think appellant is correct in this contention; the action is one in tort and interest should be allowed only from the date of the judgment in the case at bar. *Waters* v. *American Casualty Co. of Reading, Pa.,* 216 Ala. 252, 73 So. 2d 524. The judgment is therefore modified by reducing it by the amount allowed for interest, and as modified it is affirmed. Since the interest awarded by the trial court is being set aside, appellant is getting a substantial reduction in the judgment on appeal. Therefore appellee must pay the costs.

Affirmed as modified.