DREYFUS v. ST. PAUL FIRE & MARINE INS. CO.

5-3350                                          384 S. W. 2d 245

Opinion delivered November 30, 1964.

*Spitzberg, Bonner, Mitchell & Hays,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

PAUL WARD, Associate Justice. This particular litigation began when Martin Dreyfus (hereafter referred to as appellant) sued the St. Paul Fire and Marine Insurance Company (hereafter at all times referred to as appellee) for $1,700 which is the amount Dreyfus paid to settle a former law suit filed against him. Appellee filed a motion for a summary judgment which was submitted to the trial court upon certain affidavits and exhibits, and later granted. Appellant now prosecutes this appeal. To understand the former law suit referred to, and to understand the issues presented on this appeal, it is necessary to set out in some detail the factual background.

Appellant who lives in this state is the owner of a large trucking company. He is protected by a liability policy issued by appellee, with a $25,000 liability limitation. In October 1959 one of appellant's employees, Roscoe Jackson, was driving a company truck in the State of Mississippi (near Greenville) when it collided with an automobile occupied by Mrs. Tom Uzzle who was severely injured. Mrs. Uzzle filed suit in the U. S. District Court of Mississippi against appellant and Jackson, seeking $250,000 in damages for the alleged injuries. Appellant promptly notified appellee of the suit and he also hired an attorney in Greenville to protect him against a possible judgment in excess of $25,000. Appellee's attorney started negotiations for a settlement of the Uzzle claim on the basis of $15,000 but this offer was refused. Then appellant's attorney entered into negotiations with Uzzle's attorney in an effort to reach a settlement. This resulted in an offer by Uzzle's attorney to take $21,700 in full satisfaction. This offer of settlement was recommended by appellant's attorney to appellee's attorney. In response, appellee indicated it was unwilling to pay more than $20,000. Thereupon appellant told Uzzle's attorney he would accept the offer and

pay $21,700. The settlement was consummated by appellee paying Uzzle $20,000 and by appellant paying her $1,700. Mrs. Uzzle gave separate releases to appellant and appellee at the request of appellant.

We have concluded after a careful study of the record and the able argument presented by both sides, that the trial court must be sustained in entering a summary judgment in favor of appellee. In considering this case it must be kept in mind that we are not dealing with a demurrer by appellee to appellant's complaint. Appellee's motion for a summary judgment was made pursuant to Ark. Stat. Ann. § 29-211 (Repl. 1962). The only point relied on for a reversal is that "The trial court erred in granting the motion of appellee for a summary judgment."

We are not convinced by appellant's principal argument. That argument, in essence, is: Under the decisions of this Court the crucial issue here is the good faith (or lack of negligence) on the part of appellee in refusing to pay all of the $21,700, and that said issue was (under the testimony presented) a question for the jury and not for the trial court.

Appellant relies heavily on three decisions of this Court: *Home Indemnity Company* v. *Snowden*, 223 Ark. 64, 264, S.W. 2d 642; *Southern Farm Bureau Casualty Ins. Co.* v. *Parker*, 232 Ark. 841, 341 S.W. 2d 36; *Southern Farm Bureau Casualty Ins. Co.* v. *Hardin*, 233 Ark. 1011, 351 S.W. 2d 153. The decisions in the above cited cases are not decisive or controlling in the case here because those decisions were based on fact situations different from those of this case. In the *Snowden* case the insurer refused to pay anything on the $83,950 claim against the insured (Snowden). Thereupon Snowden negotiated a settlement with the claimant (the injured party) for $8,000. The insurer (whose limit of liability was $5,000) again refused to pay anything. After the insured paid the $8,000 he sued insurer for all the money back, and received a judgment for that amount. On appeal we said, in effect, that under the

circumstances the insurer acted in bad faith and must pay the limit of its policy. The *Parker* decision in principle was similar to the *Snowden* decision. The injured party sued the insured and recovered a judgment for $12,500. The insurer's limit of liability was $5,000 and the judgment was settled for $6,500, the insurer paying $5,000 while Parker paid $1,500. The insured (Parker) sued and recovered judgment against the insurer for $1,500. On appeal we affirmed the judgment. The record showed the insurer could have settled the claim for $4,000, and we held, in effect, the insurer was "negligent" in failing to do so. In doing so we also approved the "bad faith" rule—holding in effect that the insurer acted in "bad faith". Likewise, in the *Hardin* case there was evidence the insurer could have settled a $15,000 claim against the insured for $5,000 (the policy limit) but negligently or in bad faith failed to do so. The result was that to settle it cost over $13,000 of which amount the insurer paid $5,000. On appeal we approved a judgment for $8,810 which the insured recovered in the trial court against the insurer.

Under the undisputed factual situation in the case before us, we are unable to see how the question of bad faith or negligence on the part of appellee becomes an issue as it did in the previously cited cases. All parties (the insurer, the insured, and the claimants) were represented by attorneys who are conceded to be experienced and competent. All parties and their attorneys knew all the pertinent facts. They knew appellee's limit of liability was $25,000; they knew appellant would be liable for any judgment in excess of $25,000; they knew Mrs. Uzzle had sued for $250,000; and, they knew more than we could possibly know here from the record about the nature of the injuries and about the evidence of negligence, or the lack thereof, on the part of Jackson.

It was under the above circumstances that appellant (through his attorney) initiated negotiations with the Uzzles to settle the law suit, even though the policy contains the following clause: ". . . the Company may

make such investigation, negotiation, and settlement of any claim or suit as it deems expedient." As a result of his own initiative appellant received an offer of settlement for $21,700 from Mr. and Mrs. Uzzle. This offer, as previously stated, was communicated to appellee's attorney who informed appellant that his company would not be willing to pay more than $20,000 to settle the case. Without further consulting or advising with appellee, appellant accepted Uzzles' offer. The suit was then settled by appellant's paying $1,700 and appellee's paying $20,000. At no time did appellant indicate that he expected appellee to reimburse him for the $1,700 or that he himself was paying the amount under protest.

Under the facts and circumstances outlined above we must conclude that appellant paid the $1,700 voluntarily under the personal belief and legal advice that it was to his own best interest to do so. Accordingly to the only testimony on the point, if appellant had told appellee he was paying $1,700 under protest (or with the expectation of being reimbursed) appellee would not have paid the $20,000. The record, in our opinion, contains no evidence from which a jury could have found any bad faith or negligence on the part of appellee.

The exact issue here raised seems never to have been before this Court, but it has been decided adversely to appellant's contention in other jurisdictions. See *St. Joseph Transfer & Storage Company* v. *Employer's Indemnity Corporation*, 224 Mo. App. 221, 23 S.W. 2d 215 (K.C. Ct. of App.—Mo.—1930); *Levin* v. *New England Casualty Company*, 101 Misc. Rep. 402, 166 N.Y.S. 1055 (Sup. Ct. of N.Y.—App. Term—1917); and *Pickett* v. *Fidelity & Casualty Company of New York*, 60 S.C. 477, 38 S.E. 160 (Sup. Ct. of So. Car.—1901). In the first case cited there is language which we adopt as applicable here: "Both parties had a right to enter into a contract of settlement, which would be in accord and satisfaction of the original contract of insurance." Likewise we approve as applicable here language found in the *Levin* case:

"The defendant was under no duty to settle the claim. The policy gave it the option of contesting it, if it saw fit to do so. It had the right to await the decision of the court as to the claimant's demand, or to pay such sum in settlement as it saw fit. The plaintiff apparently believed that it was to his interest to settle, rather than face the uncertainty of a trial and a possible verdict against him, part of which he might have to pay."

It is our conclusion therefore that the judgment of the trial court must be affirmed.

Affirmed.

ROBINSON and JOHNSON, JJ., dissent.

SAM ROBINSON, Associate Justice, (dissenting). The trial court granted the motion for a summary judgment on the ground that there was no genuine issue of a material fact. This court has affirmed the judgment. In my opinion, the Arkansas statute authorizing summary judgments in cases where there "is no genuine issue as to a material fact" should not be stretched to a degree which allows the courts to summarily dispose of cases where the parties have the constitutional right to a trial by jury.

The Arkansas Constitution provides that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law . . ." Arkansas Constitution, Article 2, Sec. 7. The Constitution further provides that "Judges shall not charge juries with regard to matters of fact . . ." Arkansas Constitution, Article 7, Sec. 23.

In the case at bar there is a genuine issue as to a very material fact. The appellant alleged in her complaint "that the defendant [insurance company] considered its own best interest and disregarded the plaintiff's interest while good faith and fair dealing required it to give at least equal consideration to the interest of the plaintiff; and that the defendant's refusal to pay the

entire amount necessary to effect the settlement was made in bad faith.''

Defendant, in its answer, admitted that it refused to pay more than $20,000.00 in settlement of the case, but denied all allegations in the complaint not specifically admitted. The issue was drawn; it was clearly a question for the jury: Did the insurance company, by virtue of its rights under the contract of insurance, in good faith, considering all the facts, refuse to pay more than $20,000.00, or did it refuse to pay more because it well knew that the policyholder was in such a hazardous position that he would contribute to the amount necessary to effect a settlement?

There was a stipulation between the parties, but nothing in the stipulation removed or settled the foregoing issue. It can be seen from the stipulation that Mrs. Uzzle was seriously injured. Her doctor bills, etc. amounted to $3,600.00; she was confined to the hospital for 35 days. Several months after the date she received the injury she had to undergo a serious operation for the removal of a ruptured intervertebral disc. It was further stipulated:

''The medical testimony relative to Marjorie Uzzle's injuries and disability arising from the collision was conflicting. Two physicians, specialists in their fields, examined her under Court order upon motion of the defendant insurer. One of such physicians was of the opinion that she would have minimal permanent impairment as a result of a disc protrusion. He found no other significant condition related to the accident. The other court-appointed physician was of the opinion that she had a residual permanent disability resulting from injuries sustained in the accident of 15%. Her personal physician, also a specialist, was of the opinion that her accident-connected disability was 40%.''

Thus, there was substantial evidence that Mrs. Uzzle was 40% disabled due to the injuries. She had sued for $250,-000.00. The forum was favorable to the plaintiff; she

had been severely injured, and it was a clear case of liability. The defendant, Dreyfus, was good for a judgment, but had only $25,000.00 in liability insurance. He would have had to pay personally that part of a judgment up and above $25,000.00. In these circumstances, there was a genuine issue as to whether the insurance company wrongfully refused to pay more than $20,000.00 in settlement of the case. It did refuse to settle, and as a consequence, appellant, Dreyfus, was compelled to pay $1,700.00 out of his own pocket.

A jury could have found that the insurance company knew from all the circumstances, to a moral certainty, that it could refuse to pay more than $20,000.00 by way of settlement and Dreyfus would come up with whatever additional amount it took to settle the case; that he could not afford to do otherwise, the risk was too great.

The majority has said, in effect, that three cases decided by this court, and relied on by appellant, are distinguishable from the case at bar. The cases are *The Home Indemnity Co.* v. *Snowden*, 223 Ark. 64, 264 S.W. 2d 642; *Southern Farm Bureau Casualty Ins. Co.* v. *Parker*, 232 Ark. 841, 341 S.W. 2d 36; *Southern Farm Bureau Casualty Ins. Co.* v. *Hardin*, 233 Ark. 1011, 351 S.W. 2d 153. In all of those cases this court held it to be a question for the jury as to whether the insurance company wrongfully or negligently failed to settle damage suits within the limits of the policy. Actually, in my opinion, the majority does not point out any valid distinction between those cases and the case at bar.

In *The Home Indemnity Co.* v. *Snowden*, supra, the insurance company refused to pay $5,000.00, the policy limit, because, according to its view, there was no liability at all on the part of the policyholder. This court held that it was a jury question as to whether the insurance company had wrongfully failed to settle the case. In a dissenting opinion it was contended that according to the undisputed evidence, the insurance company was fully justified in refusing to make the settlement. The case fully supports the policyholder in the case at bar,

and it cannot be distinguished in a manner favorable to appellee herein.

The next case that the majority says is distinguishable is *Southern Farm Bureau Casualty Ins. Co.* v. *Parker,* supra. It is closely in point with the case at bar and fully supports the appellant policyholder. The majority has demonstrated no real distinction. The second syllabus is quoted to show the facts:

"Insured had $5,000 coverage against personal injuries; he was involved in a traffic mishap and sued for $25,000. The injured party offered to settle the damage action for $4,000, but the insurer refused to consider such offer. Jury verdict against insured for $12,500 was settled by insured for $6,500, with $5,000 paid by the insurance company and $1,500 paid by the insured who then sued the insurance company for $1,500. HELD: The insurance company owed the insured the duty to act in good faith and also the duty to act without negligence, and insured could hold the insurance company liable on either the bad faith or the negligence theory." There is no distinction on the point involved, and that is whether the insurance company wrongfully or negligently failed to settle.

The other case the majority says is distinguishable, but actually shows no distinction, is *Southern Farm Bureau Casualty Ins. Co.* v. *Hardin,* supra. To quote the first syllabus is enough to show that the case cannot be distinguished from the case at bar in a manner favorable to the insurance company:

"It was undisputed that in a suit brought in the home county of the injured plaintiff against the insured whose liability coverage was limited to $5,000 for injury to one person and $5,000 property damage, the insurer refused the plaintiff's offer to settle the case for $4,000, and although the insurer had placed a settlement value of about $2,500 on the case, it made no further effort or counteroffer to reach a settlement. The jury verdict in favor of the plaintiff was settled by the insured for

$15,000, of which the insurer paid $6,190 and the insured, $8,810. HELD: In these circumstances it was a jury question as to whether the insurance company was negligent or failed to act in good faith by not attempting to reach a settlement within the limits of the policy."

All three of the aforesaid Arkansas cases, with facts not more favorable to the policyholder than are the facts in the case at bar, stand for the proposition that it is a jury question as to whether the insurance company negligently or wrongfully failed to settle a claim within the limits of the policy, and thus caused the policyholder to contribute to a settlement.

To support its view, the majority has cited three cases from other states. The latest of these cases was decided in 1930, a long time before the adoption by the Federal Courts of Rule 56. None of the cases involved a summary judgment.

First, there is the case of *St. Joseph Transfer & Storage Co.* v. *Employer's Indemnity Corp.*, 224 Mo. App. 221, 23 S.W. 2d 215 (1930). It is directly in conflict with the heretofore mentioned Arkansas cases. Moreover, in that Missouri case the court said: "This is not case wherein the liability is clear." The court strongly indicated that if it had been a clear case of liability the result would have been different. And, furthermore, there is a vast difference in rendering a summary judgment where, at best, a controversial point is only partly developed and ruling for one of the parties where there has been a full scale development at a jury trial.

One of the other cases cited by the majority as sustaining its view is *Levin* v. *New England Casualty Co.*, 166 N.Y.S. 1055 (1917). That case is also directly in conflict with the heretofore mentioned Arkansas cases. In the New York case the court said: "The defendant [insurance company] was under no duty to settle the claim. The policy gave it the option of contesting it, if it saw fit to do so. It had the right to await the decision of the court as to the claimant's demand or to pay such sum

in settlement as it saw fit." In addition, there was no showing as to whether the insurance company wrongfully or negligently refused to settle the claim, and apparently, the court held that it had a right to consider only its own interest in determining whether a settlement would be made. Up to the present time this has not been the law in Arkansas.

The other case cited by the majority is *Pickett* v. *Fidelity & Casualty Company of New York,* 60 S.C. 477, 38 S.E. 160 (1901). Frankly, after reading this case I am wholly unable to see in what manner it supports the majority opinion. A policyholder sued an insurance company for $1,500 on a liability policy of insurance. There was a judgment for the plaintiff; the insurance company appealed, and the judgment was affirmed.

In my opinion it was error to render a summary judgment in favor of the insurance company. I, therefore, respectfully dissent.