**Vero W. GREER, Plaintiff,**

v.

**MID–WEST NATIONAL FIRE & CASU-ALTY INSURANCE COMPANY, Leo Rose, and David Rose, Defendants.**

**No. LR–69–C–74.**

United States District Court
E. D. Arkansas, W. D.

Oct. 23, 1969.

H. B. Stubblefield, of Stubblefield & Matthews, Little Rock, Ark., Poynter & Huckaba, Mountain Home, Ark., for plaintiff.

Charles W. Baker, of Moses, McClellan, Arnold, Owen & McDermott, Little Rock, Ark., for defendant Mid-West.

John Burris, of Dudley & Burris, Pocahontas, Ark., for defendant Leo Rose.

James C. Johnson, Mountain Home, Ark., guardian ad litem for defendant, David Rose.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This case involves the basic question of whether a judgment creditor of an insured tortfeasor can maintain a direct action against the latter's liability in-surance carrier under the provisions of either Ark.Stats. § 66–4001 or § 66–4002. However, the case presents two complications that must be disposed of before the basic question is reached. Facts are not in dispute.

In March of the current year the plaintiff, Vero W. Greer, a citizen of Arkansas, obtained a $55,000 verdict and judgment in the Circuit Court of Baxter County, Arkansas, against David Rose, a minor, who is also a citizen of Arkansas. That suit arose out of a motor vehicle collision involving Greer and young Rose. At the time of the accident Rose was driving the car of his father, Leo Rose, a citizen of Arkansas, and was covered by a policy of liability insurance issued to the elder Rose by the principal defendant, Mid-West National Fire & Casualty Insurance Co., a Missouri corporation having its principal place of business in that State.

Mid-West defended the State court action on behalf of David Rose, and after judgment was rendered, paid Greer $25,000, its applicable policy limit; that payment left a deficiency of $30,000, which has not been paid by anyone, and it is inferable that young Rose is not able to pay it or any substantial part of it, at least at this time.

In the course of the State court proceedings Greer offered to settle the case for the $25,000 policy limit, and the insured demanded that the offer be accepted. Mid-West refused to settle, and the case went to trial and judgment.

This suit was filed originally in the Circuit Court of Pulaski County, Arkansas, against Mid-West alone. The complaint alleges that the failure of Mid-West to settle the Greer-Rose case was either negligent or in bad faith or both; that Mid-West would be liable to the insured for the full amount of the judgment, and that plaintiff as the judgment creditor of the insured is subrogated to his rights and stands in his shoes. The prayer is for judgment in the amount of $30,000, plus statutory penalty and attorney's fee.

On May 15, 1969, the complaint was amended for the purpose of joining both of the Roses as defendants. Declaratory relief was asked as to all three defendants, but no pecuniary relief against the Roses was sought.

On May 20, 1969, Mid-West removed the case to this Court alleging that the amendment to the complaint in the Circuit Court stated no cause of action against either Leo Rose or David Rose, and that their presence in the case should be ignored for jurisdictional purposes.

On June 4, 1969, David Rose and Leo Rose moved to dismiss the complaint as to them on the ground that it stated no cause of action against them.

▆ The Court agrees with the defendants that the complaint as amended in the Circuit Court states no cause of action against the individual defendants. Apart from that, it is clear to the Court that Leo Rose has never had any interest in the case. David Rose has a very real interest, but it is the original interest that plaintiff is seeking to assert derivatively so that David Rose should be realigned in the case as a party plaintiff. With Leo Rose being a nominal party at best and with David Rose realigned as just stated, the Court finds that it has subject matter jurisdiction.

In July 1969 on application of the plaintiff, James C. Johnson, Attorney at Law, Mountain Home, Arkansas, was appointed guardian ad litem for David Rose. The guardian filed an answer for the young Rose and also filed a cross-claim against Mid-West asserting the same claim of wrongful failure to settle the Greer-Rose case as had been asserted by the plaintiff originally.

Needless to say, Mid-West denies that its refusal to settle the original case in the Baxter County Circuit Court was either negligent or in bad faith.

▆ In the state of the pleadings abstracted to this point the situation before the Court was essentially the same as that presented in Great American Insurance Co. v. Ratliff, E.D.Ark., 242 F.Supp. 983, in which both the insured and the judgment creditor of the insured were seeking to recover from the insurance company the full amount of a State court judgment in excess of policy limits on the theory that the insurance company had wrongfully refused to settle within those limits. In such a situation it really makes no difference whether the judgment creditor can maintain such an action because there is no question that the insured can do so. Dreyfus v. St. Paul Fire & Marine Ins. Co., 238 Ark. 724, 384 S.W.2d 245; Southern Farm Bureau Casualty Ins. Co. v. Hardin, 233 Ark. 1011, 351 S.W.2d 153; Southern Farm Bureau Casualty Ins. Co. v. Parker, 232 Ark. 841, 341 S.W.2d 36; Home Indemnity Co. v. Snowden, 223 Ark. 64, 264 S.W.2d 642; Great American Ins. Co. v. Ratliff, supra. If the insured prevails in the action, his judgment creditor will profit from his success; if the insured does not prevail, as happened in *Ratliff*, both he and his creditor are bound by the adverse outcome.

On the basis of the cross-claim of David Rose the case would normally have been set for trial on the merits. However, shortly after the cross-claim was filed, David Rose began to vacillate on the question of whether he wanted to proceed against Mid-West. While he is still a minor, he is well into his twenty-first year, and in August 1969 he went before the Chancery Court of Baxter County and had his disabilities removed by an order entered in an ex parte proceeding.

As has been stated, both Roses originally moved to dismiss the complaint in this case, and that motion was signed by Mr. J. B. Burris of Pocahontas as attorney for the Roses. On August 5 Mr. Burris filed on behalf of David Rose a motion for an order relieving the guardian ad litem from further duties, and later he filed a motion to dismiss the cross-claim of young Rose against the insurance company.

Plaintiff resisted those motions, and the Court having gained the impression

that young Rose was talking one way to the plaintiff and another way to representatives of the insurance company called a hearing to determine what he actually wanted to do.

That hearing was held on September 23 and Rose testified at it. His testimony was not particularly satisfactory. Up to a point he would like to see Mid-West pay the balance of the judgment. On the other hand, he seems to be unwilling to go to the trouble of litigating the matter; he apparently feels that he can rid himself of the judgment by taking bankruptcy at an appropriate time.

■ In the course of the hearing there was some talk about the possibility of someone asking the Chancery Court to vacate its order removing the disabilities of David Rose, but no such request was ever made to that Court, and the term at which the order was entered has now expired. That order, of course, is not subject to collateral attack in this proceeding.

■ Young Rose will be twenty-one in a few months; his disabilities have been removed by an experienced and conscientious Chancellor. He has not asked leave to withdraw his motions to discharge the guardian ad litem and to dismiss the cross-claim. If he does not desire to proceed against the company and is willing either to live with a $30,000 judgment against him or seek to have it discharged in bankruptcy, the Court is not going to make him prosecute his claim against his will. His motions will be granted; he will go out of the case; and the situation that existed in *Ratliff* will no longer exist here.

With the complications that have been discussed out of the way, the Court returns to the basic question of whether a judgment creditor of an insured can recover from the insurer for a breach of duty owed to the insured to exercise good faith and ordinary care in considering an offer of the creditor to settle his original claim within policy limits.

The Supreme Court of Arkansas seems not to have decided that precise question, and authorities from other jurisdictions are divided. See Annotation, "Duty of liability insurer to settle or compromise," 40 A.L.R.2d 168, 195–196; see also A.L.R.2d Later Case Service. The divergence of view would seem to stem in part from differences in the language of various direct action statutes and in part from differences in the characterization of the status of an injured party in relation to the insured and to the insurance contract.

■ Apart from statute an injured party has no right of direct action in Arkansas against the liability insurance carrier of the tortfeasor. Arkansas has two direct action statutes, and the relation between the two may not be altogether clear.

Section 66–4001 seems to relate to insurance policies which provide indemnity against actual monetary loss arising from torts committed by the insureds. That section provides that in the case of such a policy the injured party shall be subrogated to the rights of the insured and may proceed directly against the insurance company after obtaining judgment against the insured if the judgment remains unsatisfied for thirty days after notice of the entry of the judgment is served upon the attorney for the insured, the insured, or the insurer.

Section 66–4002 seems to relate to the more common form of liability policy that provides indemnity against legal liability as opposed to actual pecuniary loss. That section says nothing about subrogation. Before a direct action may be brought under section 66–4002, the judgment creditor must cause an execution to be issued against the insured and returned nulla bona.

■ Whatever the differences between those two statutes may be, they have one thing in common which is of controlling importance here. Both of them in express terms limit the judgment creditor's recovery against the insurer to the limits of the policy. They

do not, in the Court's opinion, permit the judgment creditor on a theory of subrogation or otherwise to recover an amount in excess of the policy limits merely because the insured might have been able to do so.

In his thorough letter brief on the question counsel for the plaintiff places reliance upon certain language employed by this Court in Great American Insurance Co. v. Ratliff, supra. In that case an injured party, Ratliff, sued the insured, Holland, in the Circuit Court of Saline County. Great American defended the suit as it was required under its policy to do. Holland's limits were $10 and $20 thousand; Ratliff offered to settle for $10,000, which offer the company refused to accept, one reason for the refusal being that the insured insisted that the incident relied upon by Ratliff had never in fact occurred. The Circuit Court rendered judgment in favor of Ratliff for $15,000. The insurance company then filed a declaratory judgment suit in this Court against both Ratliff and Holland contending that Holland had committed an intentional tort not covered by the policy. Both Holland and Ratliff counterclaimed seeking to recover the full amount of the judgment. The Court found ultimately that the Ratliff-Holland episode did involve an intentional tort, and that the company was not liable to anyone.

As has been indicated, since both Holland and Ratliff were before the Court, and since the Court found in favor of the company, the Court had no real occasion to consider the rights of Ratliff vis-a-vis the company apart from the claim of Holland, and did not undertake to do so.

The language of the opinion relied on by counsel must be read in context; the Court has considered the entire opinion in *Ratliff* carefully and sees nothing therein that is inconsistent with the conclusion here reached.

As has been seen, Mid-West has paid plaintiff the full policy limit, and the Court has now held that as a matter of law plaintiff can recover no more. Hence, no useful purpose would be served by conducting a trial on the issues of negligence or bad faith on the part of Mid-West in rejecting the $25,000 settlement offer.

Judgment will be entered dismissing the case as to both of the Roses and dismissing with prejudice the principal claim of plaintiff against Mid-West.