**Noble McCHRISTIAN, Plaintiff,**
v.
**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. F–69–C–11.

United States District Court
W. D. Arkansas,
Fayetteville Division.
Oct. 15, 1969.

Van H. Albertson, Huntsville, Ark., Putman, Davis & Bassett, Fayetteville, Ark., for plaintiff.

Crouch, Blair, Cypert & Waters, Springdale, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge (sitting by designation).

This is an action timely removed from the Chancery Court of Madison County, Arkansas, against State Farm Mutual Automobile Insurance Company, based upon the defendant's alleged negligence and bad faith in failing to settle an action for personal injuries against its insured, plaintiff herein.

Jurisdiction is established by diversity of citizenship of the parties and the amount involved. 28 U.S.C.A. 1332(a).

The controversy between the parties arose in Arkansas and must be determined in accordance with the laws of Arkansas.

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52 (a) of the Federal Rules of Civil Procedure.

On January 28, 1967, defendant issued to plaintiff a policy of automobile liability insurance #234929A2804, by which it agreed to indemnify plaintiff for all sums which he might become legally obligated to pay by reason of the operation of his 1954 Chevrolet pickup truck, up to and including $10,000 for bodily injury sustained by one person in any one accident or $20,000 for two or more persons in any one accident, and up to and including $5,000 for property damage. Said policy of insurance was in full force and effect on February 12, 1967. On that date plaintiff was involved in an automobile accident in which a car driven by Joseph R. Marlow collided with one driven by Jerry Don Parker. On October 23, 1967, Tommy Hooten, Rhoda Hooten and Michael Hooten, the occupants of the automobile driven by Parker, brought suit in the Circuit Court of Sebastian County, Arkansas, against plaintiff and Marlow seeking judgment against both for personal injuries and property damage allegedly sustained as a result of the collision. McChristian cross-complained against Marlow for contribution as a joint tort-feasor, and Marlow cross-complained against McChristian for his property damage.

A jury trial resulted in (1) a judgment against McChristian in favor of

Tommy Hooten for $36,400; (2) a judgment against McChristian in favor of Rhoda Hooten for $1,200; (3) a judgment against McChristian in favor of Michael Hooten for $118; (4) dismissal of the Hootens' complaint against Marlow; (5) dismissal of Marlow's cross-complaint against McChristian; and (6) dismissal of McChristian's cross-complaint against Marlow. The dismissal of McChristian's cross-complaint was, of course, predicated upon a jury finding that McChristian was responsible for 100% of the negligence which proximately caused the accident.

The judgment of the Circuit Court was affirmed sub nom McChristian v. Hooten, (1969) 245 Ark. 1029, 436 S.W.2d 844. The company subsequently satisfied in full the judgments of Rhoda and Michael Hooten and has paid the sum of $11,-400, plus interest, as a credit on the judgment of Tommy Hooten, leaving $25,000 unsatisfied on the latter judgment, which sum is the object of the present suit.

▉ In the liability policy issued by defendant to plaintiff, defendant agreed:

"(2) To defend any suit against the insured alleging such bodily injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

By virtue of the quoted provision, the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in settlement negotiations. It is generally understood that these are rights necessary for the insurer to have in order to justify or enable it to assume the obligations which it does under the contract. However, the reservation of control of settlement viewed in light of the company's obligation to pay on behalf of the insured up to the policy limit, all sums which he shall become legally obligated to pay, imposes upon the insurer

a duty to act in good faith and in the exercise of reasonable care in investigating and evaluating for settlement purposes all claims against the insured. Where an insurer, either through negligence or bad faith, fails to settle a claim against its insured within the policy limits, when it is possible to do so, such insurer is liable to the insured for any judgment recovered against him in excess of such policy limits. Southern Farm Bureau Cas. Ins. Co. v. Mitchell, (8 Cir. 1963) 312 F.2d 485; State Farm Mutual Automobile Ins. Co. v. Jackson, (8 Cir. 1965) 346 F.2d 484; Southern Farm Bureau Cas. Ins. Co. v. Hardin, (1961) 233 Ark. 1011, 351 S.W.2d 153; Southern Farm Mutual Cas. Ins. Co. v. Parker, (1960) 232 Ark. 841, 341 S.W.2d 36; Home Indemnity Co. v. Snowden, (1954) 223 Ark. 64, 264 S.W.2d 642.

On the day of the collision, plaintiff drove from his home in a southerly direction upon a country road which intersects State Highway No. 74. His testimony reflects that he stopped when he reached the intersection and looked both east and west and that the highway was clear in both directions. Marlow was then traveling east, and Parker, the driver of the Hooten automobile, was traveling west. Both drivers testified that McChristian slowly entered the highway without coming to a complete stop. Plaintiff developed a speed of 5–15 m. p. h. as he completed a left-hand turn into the eastbound lane of travel. As he was crossing the median line, he observed the approach of the Hooten vehicle, but did not become aware of the presence of Marlow until the latter was immediately behind him. Plaintiff had traveled east down the highway approximately 150 feet prior to the impact.

When McChristian entered the highway, the Hooten automobile was located approximately 100–150 feet east of the intersection, traveling at 55–60 m. p. h. Parker noted the position of McChristian and saw Marlow crest the hill at a high rate of speed and go out of control. He immediately pulled the Hooten vehicle to the right and applied

the brakes, leaving 80 feet of skid marks, but was prevented from getting completely off the highway by guard posts spaced along the shoulder.

When Marlow reached the crest of the hill, he saw McChristian entering the highway and immediately applied his brakes, leaving 462 feet of skid marks from the crest of the hill to the point of impact. Marlow attempted to pass McChristian in the gravel on the south shoulder of the highway, but the road was too narrow; he then cut back across the south side of the highway behind McChristian, went around McChristian and collided with the Hooten vehicle on the north side of the highway a few feet east and in front of McChristian. The impact knocked the Hooten automobile off of the highway on the north side and down an embankment, and each of the occupants sustained some degree of injury. Neither automobile struck the McChristian truck, which was then completely in the proper traffic lane on the south or right side of the highway.

If the concepts of good faith and negligence can be distinguished in the context of these cases, it may be that negligence relates more to the actual preparation and investigation of the claim against the insured, whereas good faith may relate more to the insurer's evaluation of the case and subsequent decisions regarding settlement. The relationship is, of course, quite close as negligence in the investigation of the claim may be such that the company does not possess sufficient information to make a good-faith judgment. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1140–1141 (1954).

■ An insurer clearly must exercise reasonable care to discover facts as to liability and damages upon which an intelligent decision may be based. Southern Farm Bureau Cas. Ins. Co. v. Mitchell, supra; Southern Farm Bureau Cas. Ins. Co. v. Hardin, supra; Radio Taxi Service v. Lincoln Mutual Ins. Co., (1960) 31 N.J. 299, 157 A.2d 319; Murach v. Massachusetts Bonding & Ins. Co., (1959) 339 Mass. 184, 158 N.E. 2d 338; Hoyt v. Factory Mutual Liability Ins. Co., (1935) 120 Conn. 156, 179 A. 842; Hilker v. Western Auto Ins. Co., (1931) 204 Wis. 1, 231 N.W. 257, 235 N.W. 413. This general statement quite obviously also involves a measure of good faith.

The company first became aware that its insured had been involved in an automobile accident when McChristian orally reported the event on May 19, 1967, over three months after the occurrence. McChristian did not feel that he was in anywise involved and simply made no earlier report to the company. State Farm nonetheless undertook the defense of the action, and on May 23, 1967, a field claims adjuster representing the company called on McChristian and took a recorded question and answer statement of his version of the facts surrounding the accident. On May 29, 1967, the Fayetteville, Arkansas, claims office notified the company's claims superintendent in charge of northwest Arkansas of the occurrence, and an initial reserve of $925.00 was placed on the claim. That sum was raised to $1,000 on June 29, 1967, on the basis of another report from the local claims office.

The attorney retained by State Farm in the accident case has been engaged in private practice for over thirty years, and is highly rated and well respected in the legal community. His firm had represented the company in similar cases since 1936. Following the assignment of the suit brought by the Hootens in the accident case in September 1967, shortly after the complaint was filed, counsel filed an answer and cross-complaint in which he specifically pleaded joint venture and contributory negligence on the part of the Hootens and Parker and alleged that any injuries sustained by them were solely caused by the negligence of Marlow. The cross-complaint, of course, sought contribution from Marlow as a joint tortfeasor.

When counsel received the case investigation file from the company in

late September 1967, it contained a transcript of the recorded statement taken by State Farm from McChristian, the Arkansas State Police accident report, photographs of the scene of the accident, and a typewritten summary of an interview conducted by a company investigator with Joseph Hayward, a passenger in the Marlow vehicle. On October 2, 1967, the company wrote McChristian, using certified mail, informing him that he had been sued for an amount in excess of his policy limits and advising him of his right to personally engage attorneys to represent him in the matter. On February 6, 1968, State Farm's counsel deposed Tommy Hooten, Rhoda Hooten, Michael Hooten, Oyther Ray Hooten (father of Tommy and Michael and husband of Rhoda), Jerry Parker and Joseph R. Marlow. A comprehensive deposition analysis was subsequently prepared by counsel, and a copy thereof was transmitted to the company. A medical report prepared by Tommy Hooten's physician, which described his injuries and treatment, was furnished by the attorney representing the Hootens, as were copies of medical bills and somewhat sketchy reports from other doctors. On April 16, 1968, after the company's file had been completed, the reserve on the claim was raised to $9,500.

On May 26, 1968, four days prior to the state court trial, counsel for State Farm visited McChristian at the latter's home, and the two then visited the scene of the accident, where counsel reviewed the facts of the case and McChristian's expected testimony at trial.

In short, the investigation and preparation of the case by State Farm's counsel was quite thorough and professional. Consequently, plaintiff now seems to place primary reliance on the alleged failure of the company to act in good faith, but would, nonetheless, urge the court that counsel was negligent in failing to secure enlarged, commercial photographs of the scene of the accident, in failing to depose Tommy Hooten's physician or to offer any evidence re-

butting Hooten's special damages, and in failing to discover and depose two witnesses who were at the scene of the accident subsequent to the collision.

As indicated, McChristian failed to make any report to State Farm until more than three months after the accident, at a time when the season had changed from winter into summer. The company took photographs of the scene subsequent to receiving notification of the accident, and there is no contention that the photographs taken were inadequate. In addition, it is undisputed that photographs depicting the topography taken only a few days after the accident at the instance of the attorney representing the Hootens were made available to counsel for State Farm.

The failure of counsel to depose Tommy Hooten's physician was reasonable. Counsel representing State Farm and the attorney for the Hootens had enjoyed a close working relationship over a period of thirty years, and each placed great reliance in the confidences and disclosures of the other. As the case developed, the Hootens' attorney transmitted all written and oral information that he received regarding the injuries and damages sustained by Tommy Hooten to State Farm's counsel, all of which proved to be quite accurate. In addition, State Farm's counsel was quite familiar with and respected the judgment of Tommy Hooten's physician. In an early report to counsel for the company, Hooten's attorney had disclosed that the doctor would estimate Tommy Hooten's injury resulted in 15 percent permanent partial disability to his left arm, a figure that was more than satisfactory to the defense. At trial, the medical testimony developed precisely as anticipated. There was even less reason to contest the special damages sustained by Tommy Hooten, which were easily proven and were quite accurate, with the exception of some minor inflation in loss of earnings and property damage.

Finally, there was no negligence on the part of defendant and no prejudice resulted to plaintiff from the failure to

depose the sheriff of Madison County, Arkansas, and a neighbor of Mc-Christian who rendered some aid at the scene of the accident. Counsel was totally unaware of the existence of either until the day of the trial, when Mc-Christian revealed that he thought the sheriff had been at the scene of the accident. Counsel immediately attempted to reach the sheriff by telephone, but was unable to do so. It is clear that State Farm's claims adjuster did not, in the course of taking the recorded statement from McChristian, question him regarding the existence of witnesses other than the parties to the accident. It is equally clear that McChristian was contractually obligated to cooperate fully with the company, yet demonstrated a recalcitrant attitude throughout the investigation and trial, revealing no information other than that specifically requested of him. In any event, the depositions of both witnesses were taken in connection with the present action and reveal that neither possessed any knowledge or information bearing on the manner in which the accident occurred or on the issue of negligence. A finding that counsel was thereby at fault or that such omission contributed to foreclose a good-faith decision as to settlement would be without basis in reason or logic.

▇▇▇ The determination by the court as to the insurer's good faith necessarily involves considerable second-guessing. The decision not to settle must be an honest one, resulting from a fair weighing of probabilities. The officers of any large insurance company have a great deal of experience in handling claims arising out of automobile accidents and are entitled to use that experience in reaching a decision. A good-faith decision is, therefore, simply an honest and intelligent one, giving equal consideration to the interest of the insured,[1] made in light of the company's expertise in the field. The requirement is satisfied if *reasonable* settlement possibilities are exhausted by the company. State Farm Mutual Automobile Insurance Co. v. Jackson, supra. Quite obviously, a reasonable settlement offer involves a proper assessment of the questions of damages *and* liability. Thus, where reasonable cause appears, in the form of a clearly litigable issue as to damages or liability, for rejecting a settlement offer and defending the action, the good faith of the company will be vindicated. State Farm Mutual Automobile Ins. Co. v. Jackson, supra; Frank B. Connet Lumber Co. v. New Amsterdam Cas. Co., (8 Cir. 1956) 236 F.2d 117. Any other approach would deprive the insurer of practically all discretion and would result in virtual absolute liability, a wholly unbargained for and unintended consideration.

It is quite obvious from the record that there was no clearly litigable issue as to the injuries and damages sustained by Tommy Hooten. There was undisputed evidence that he suffered a hairline skull fracture and a severe fragmentation of the head of the left humerus, which necessitated a hospital stay and surgery. He re-entered the

1. Southern Farm Bureau Casualty Ins. Co. v. Parker, (1960) 232 Ark. 841, 341 S.W.2d 36, provides authority for the proposition that the interests of the insured must be given equal consideration with those of the insurer. In Dreyfus v. St. Paul Fire & Marine Ins. Co., (1964) 238 Ark. 724, 384 S.W.2d 245, the following statement from Levin v. New England Casualty Co., 101 Misc. 402, 166 N.Y.S. 1055 (1917), was quoted with approval at 238 Ark. 729, 384 S.W. 2d 248:

"'The defendant was under no duty to settle the claim. The policy gave it the option of contesting it, if it saw fit to do so. It had the right to await the decision of the court as to the claimant's demand, or to pay such sum in settlement as it saw fit.'"

As pointed out in the dissent, *Levin* appears to be in direct conflict with prior Arkansas case law. The court is of the opinion that the Arkansas court in *Dreyfus* did not intend to in any manner diminish the standard of care or good faith required of a liability insurer.

hospital for surgery some 16 weeks after the initial surgery in order to remove a steel pin which had been placed in his arm. These operations resulted in an ugly keloid scar on his left shoulder and arm. He cannot now pass certain preemployment physicals in the Fort Smith, Arkansas, area.[2] As heretofore stated, medical testimony indicated a 15 percent permanent partial disability to his left arm. His medical bills amounted to $2,636.00; his loss of wages amounted to $2,300.00, and his property damage amounted to $1,400.00, for a total of $6,336.00 in special damages. The verdict, however, was for $36,400.-00, in an area noted for the conservatism of its juries. The remainder in excess of the special damages was necessarily apportioned to pain and suffering, future medical expenses, physicial disfigurement, and permanent injury.

The argument of the insurer then and now is that there may be considerable damage without negligence in an automobile collision, and that Joseph Marlow was responsible for 100 percent of any negligence in the subject collision. It may be added that plaintiff has throughout maintained and at the trial of the present action testified that he does not believe that he was at fault in any manner. He does, however, attempt to attribute considerable fault to State Farm.

Upon completing its investigation of the case, the company was, of course, aware that McChristian would testify that he stopped and looked in both directions and saw neither vehicle before proceeding onto the highway, and that he exercised reasonable care at all times. McChristian could also be expected to testify that, immediately after the accident, Marlow told McChristian that his (Marlow's) brakes failed. The company was also aware that the speed limit in the area of the accident was 60 m. p. h. Jerry Parker could be expected to testify that the speed of the Marlow vehicle was between 75–80 m. p. h. Rhoda Hooten[3] could be expected to testify that, although she could not place a figure on Marlow's speed, Marlow was traveling "much" faster than the Hooten vehicle, which was being driven by Parker at 55 m. p. h. The company was in possession of the Arkansas State Police accident report, which revealed that the skid marks left by Marlow began at the crest of the hill and extended some 462 feet. Although the evidence was in conflict, the information possessed by the company presented a set of facts upon which the insurer could have reasonably concluded that its insured was not guilty of negligence and that the accident was proximately caused by the negligence of Marlow. Specifically, it was reasonable for the company to believe that its insured exercised reasonable care, that Marlow saw McChristian at the earliest possible moment, yet could not stop his vehicle or avoid impact due to excessive speed and/or defective brakes.

Based on this set of facts, the question of good faith would be a close one had the company made no offer at all. Nonetheless, on May 1, 1968, at a pre-trial conference in the state court, State Farm's counsel offered to pay medical expenses in settlement of the case. The offer was rejected, but on or about May 22, 1968, because of the imminence of trial and the known vagaries of juries, another offer of settlement was made by the insurer, this time in the amount of $5,000, which was also rejected. Shortly thereafter, a third offer of settlement for $6,000 was made by State Farm and considered for several days by the Hootens. Their attorney informed State Farm's counsel a few days prior to trial that his clients had determined to reject the insurer's offer of $6,000 but would probably settle for $10,000. No further pre-trial settlement negotiations were conducted, and the case proceeded to judgment. Pending the disposition of the appeal in the Arkansas Supreme Court, State Farm of-

2. It is also undisputed that, at the time of the trial, Tommy Hooten was making more money than he was making prior to the accident.

3. Tommy and Michael Hooten were asleep in the back of the Hooten vehicle at the time of the collision.

fered to satisfy the judgments of Rhoda and Michael Hooten and to pay $11,400 to Tommy Hooten in full settlement, but this offer was also refused. The testimony by deposition of State Farm's claims superintendent, far from revealing a lack of good faith, indicates that the sole reason the insurer was willing to pay anything at all was its consideration of the potential liability of plaintiff over and above his policy limits.

Plaintiff, however, contends that he was not kept fully advised of pending settlement negotiations, that counsel for State Farm was not made aware of plaintiff's liability limits, and that these factors provide some evidence of bad faith.

██ It is undisputed that counsel for the insurer informed McChristian of the offer of $6,000 during the course of the visit at plaintiff's home on May 26, 1968. The evidence is in conflict as to whether counsel informed plaintiff at that time of the Hootens' offer to settle for $10,000 and as to whether plaintiff at any time urged the insurer to settle the claim. A demand for settlement by plaintiff would not, of course, be a condition precedent to recovery in the present action. It is, of course, extremely desirable that an insurer keep its insured fully informed of any settlement negotiations, to the end that the insured may take such steps as may be open to him for his own protection. Hilker v. Western Auto Ins. Co., supra. Even assuming, arguendo, that counsel for the insurer did fail to inform plaintiff of the Hootens' offer to settle for $10,000, and even if that fact is considered in isolation, it is clear that plaintiff was not thereby prejudiced, as it is undisputed that he had neither the wherewithal[4] nor the faintest desire to acquire independent counsel. It is difficult to conclude that any injury did or could result to plaintiff. See Norwood v. Travelers Ins. Co., (1939) 204 Minn. 595, 284 N.W. 785, 131 A.L.R. 1496. There is also authority for the proposition that no breach of duty arises from the failure of an insurer to discuss an offer of settlement with its insured where the case against the insured lacks merit in both law and fact. Strode v. Commercial Cas. Ins. Co., (D.C.Ky.1952) 102 F.Supp. 240, 246–247, aff'd C. C. Ins. Co. v. Strode, (6 Cir. 1953) 202 F.2d 599.

██ There is even less merit in the contention of plaintiff that State Farm was somehow guilty of bad faith in failing to inform its counsel of plaintiff's policy limits. Plaintiff contends that counsel for State Farm could not, therefore, have possibly known when he ceased to deal with State Farm's money and started to deal with the assets of plaintiff. That, of course, is precisely the object of this quite common practice. Many jurisdictions specifically require that the insurer evaluate the case as though there were no liability limits. Kaudern v. Allstate Ins. Co., (D.N.J. 1967) 277 F.Supp. 83; Crisci v. Security Ins. Co., (1967) 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173; Cowden v. Aetna Casualty & Surety Co., (1957) 389 Pa. 459, 134 A.2d 223; American Fidelity & Cas. Co. v. L. C. Jones Trucking Co., (Okl.1957) 321 P.2d 685; Dumas v. Hartford Acc. & Indem. Co., (1948) 94 N.H. 484, 56 A.2d 57. Surely the fact that the attorneys representing State Farm are not apprised of an insured's policy limits can only insure an objective evaluation of the case by counsel. In view of the fact that the company, and not its retained counsel, makes the decision whether to settle, the practice in question would appear to be both reasonable and desirable.

The liability to pay an excess judgment does not merely depend upon the happening of the unexpected event. The court simply cannot conclude that the company was unduly adventurous at the expense of plaintiff, or that the danger of an adverse verdict in the trial of the accident case reasonably appeared to be so great as to warrant a finding of bad faith in failing to settle within the policy limits, or that the decision not to meet the settlement demand sprang from op-

---

4. Plaintiff was, in fact, judgment proof, a fact presumably known to State Farm.

timism unrelated to the realities of the lawsuit.

 An insurer will clearly not be excused for indifference, but the inaccuracy of a prophecy as to what a jury will do in the trial of a personal injury case where the evidence is conflicting or gives rise to conflicting inferences does not, in the opinion of the court, justify a finding of bad faith. Frank B. Connet Lumber Co. v. New Amsterdam Cas. Co., (8 Cir. 1956) 236 F.2d 117, 127.

The record here simply does not present a situation wherein the court can say as a matter of law that the defendant failed to exercise good faith or to exercise the required degree of care and prudence.

Therefore, judgment is being entered today dismissing the complaint of plaintiff and directing that each party pay its own costs.