**Jackie Kaye CARPENTER, formerly known as Jackie Kaye Warhurst, Appellee/Cross-Appellant,**

v.

**AUTOMOBILE CLUB INTERINSURANCE EXCHANGE, Appellant/Cross-Appellee.**

**Crawford & Company, Defendant-Appellant.**

**Nos. 94–1673, 1674 and 1796.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1994.

Decided July 3, 1995.

Robert J. Donovan, Marianna, AR, argued, for appellant Automobile Club.

Martin W. Bowen, West Memphis, AR, argued, for Crawford & Co.

B. Michael Easley, Forrest City, AR, argued (J. Brook Lathram and Todd A. Rose, Memphis, TN, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, REAVLEY,* Senior Circuit Judge, and McMILLIAN, Circuit Judge.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

McMILLIAN, Circuit Judge.

Automobile Club Interinsurance Exchange (AAA) and Crawford & Company (C & C) (together appellants) appeal from a final judgment entered in the United States District Court for the Eastern District of Arkansas [1] upon a jury verdict finding them liable to Jackie Kaye Carpenter (Carpenter) in the amount of $1,825,250. *Carpenter v. Automobile Club Interinsurance Exchange*, No. H–C–93–65 (E.D.Ark. Mar. 7, 1994). For reversal, appellants argue that the district court erred in denying their motions to dismiss on statute of limitations grounds. They also each advance several arguments individually. Carpenter cross-appeals, contending that the district court erred in failing to give a jury instruction on punitive damages and in denying her claim for interest, calculated at the Arkansas statutory rate, as an element of her damages. For the reasons discussed below, we affirm in part and reverse in part and remand the case to the district court with instructions.

## I. BACKGROUND

Shortly before midnight on July 28, 1989, Carpenter backed her car out of the parking lot of a lounge onto the traveled portion of a public street and collided with a passing motorcycle. Jonathan Giles, the driver of the motorcycle was injured. His passenger, William David White, died as a result of injuries sustained in the accident. Both boys were fourteen years of age. Two hours after the accident, Carpenter's blood alcohol level was .13%; however, Carpenter maintained that she had consumed only three beers and that she was not intoxicated at the time of the accident.

Carpenter was insured by AAA. The policy limits were $50,000 per person and $100,000 per occurrence. The policy provisions excluded any award for punitive damages.

On August 2, 1989, Carpenter reported the accident to AAA. AAA immediately retained C & C, an independent claims adjusting firm, to handle claims arising out of the accident.

C & C assigned the investigation of the Carpenter matter to one of its agents, David Seay. In mid-August 1989, Seay forwarded a claim to AAA for $900 to cover property damage to Giles's motorcycle. AAA paid that claim immediately. Seay also notified White's parents (the Whites) that C & C had been retained by AAA to investigate the accident.

On September 11, 1989, Clint Saxton, an attorney retained by the Whites to handle their claim for their son's wrongful death, sent Seay a letter demanding payment of the $50,000 policy limits and advising Seay that the Whites intended to sue Carpenter for the difference between the policy limits and their total damages. In October 1989, Saxton sent Seay a second letter repeating the demand for $50,000 and setting a response deadline of October 10, 1989. Saxon's September and October demand letters said nothing about a release of Carpenter from liability if AAA tendered the policy limits. Neither AAA nor C & C responded to Saxton's demand letters. However, Seay did request from the Whites a copy of their son's death certificate and their medical bills.

On October 26, 1989, Seay reported to AAA that he had made a $6,000 offer to Giles's parents to settle Giles's personal injury case, which they rejected because the extent of Giles's injuries was still unknown.

Finally, on January 9, 1990, Saxton, on behalf of the Whites, sent a third demand letter to Seay, enclosing the death certificate and the current medical bills that Seay had requested. The letter repeated the demand to settle the Whites' wrongful death claim for the policy limits, but this time the Whites also offered to release Carpenter from all liability if the $50,000 was paid within ten days from Seay's receipt of the letter. The letter further stated that the Whites would seek compensatory and punitive damages if a lawsuit became necessary.

Seay received this third and final demand letter from Saxton on January 11, 1990. Boone Nance, an attorney representing Carpenter in her criminal cases, also received a

---

**1.** The Honorable Henry Woods, Senior United States District Judge for the Eastern District of Arkansas.

copy of this letter. Nance immediately contacted Seay by telephone urging prompt settlement of the Whites' wrongful death claim; that conversation was confirmed in a letter from Nance to Seay, dated January 12, 1990. On January 19, 1990, eight days after receiving the third letter from Saxton, Seay forwarded the letter to AAA. Seay also enclosed Nance's letter dated January 12, 1990, demanding immediate settlement of the Whites' claim against Carpenter.

On January 24, 1990, AAA received Saxton's third demand letter, which had been forwarded by Seay. Prior to that time, however, in December of 1989, AAA had instructed C & C to close both the Giles file and the White file. Moreover, upon receipt of Saxton's third letter, no one from AAA contacted Saxton to see if the Whites' settlement offer was still open. Thus, on January 24, 1990, having received no response from AAA, Saxton filed the Whites' wrongful death claim against Carpenter in Arkansas state court.

AAA hired Jake Brick, an attorney, to represent Carpenter in the Whites' state court wrongful death action. AAA also internally assigned the White matter to Hugh McMullen, a AAA branch claim manager. Contrary to Brick's recommendation, McMullen decided not to implead Giles as a third-party defendant in the Whites' wrongful death action.

Nine months after the Whites filed their wrongful death action, Carpenter pleaded guilty to negligent homicide in her state criminal proceedings. One month later, AAA reassigned the White and Giles matters to Charles Krah, a AAA casualty claim manager. In an internal report known as a "Bodily Injury Evaluation Authority Request," Krah assigned one hundred percent of the fault for the July 1989 accident to its insured, Carpenter. Krah also authorized Brick to offer the Whites the $50,000 policy limits to settle their claim against Carpenter in exchange for their full release of Carpenter. At that point, the Whites rejected AAA's offer. After Brick advised AAA of the Whites' rejec-

tion, he again suggested impleading Giles. Krah then authorized Brick to implead Giles in the Whites' wrongful death action against Carpenter. The third-party complaint alleged that Giles was responsible for the accident. Because AAA's policy with Carpenter excluded the award of punitive damages, the third-party action (and the resulting likelihood that Giles would bring cross-claims) exposed Carpenter to personal liability for additional punitive damages.[2] Not unexpectedly, Giles's attorney filed a cross-complaint against Carpenter seeking both compensatory and punitive damages.

AAA filed an offer of judgment in the amount of $50,000 to settle the Whites' wrongful death claim. The Whites rejected the offer and the case proceeded to trial. The state trial court, finding that Carpenter had no submissible case against Giles for negligence, dismissed the third-party complaint. The jury awarded the Whites $510,200 compensatory damages and $500,000 punitive damages, and awarded Giles $40,000 in compensatory damages and $500,000 in punitive damages. Carpenter thus was left personally owing the Whites $960,200, plus interest, and owing Giles $500,000, plus interest. AAA appealed the judgment to the Arkansas Supreme Court; however, it neither posted a supersedeas bond to protect Carpenter from execution by judgment creditors while the appeal was pending nor appealed the issue of Giles's negligence. The judgment was affirmed. *Warhurst v. White*, 310 Ark. 546, 838 S.W.2d 350 (1992).

On June 11, 1993, Carpenter filed the present lawsuit in federal district court against AAA for negligence and bad faith in handling the White and Giles claims, and against C & C for negligence in handling the White claim, arising out of the July 1989 accident. Following a jury trial, the district court entered judgment based upon jury verdicts in favor of Carpenter on all her claims. The district court awarded Carpenter a total of $1,825,250. Interest was awarded at a rate of 4.22%. AAA was adjudged solely liable for $625,000 of the award, resulting from Giles's

---

**2.** Carpenter alleges that having the same jury consider Giles's claims and the Whites' claims

increased her exposure to punitive damages.

underlying state court judgment against Carpenter. AAA and C & C were adjudged jointly and severally liable for $1,200,250, resulting from the Whites' underlying judgment against Carpenter. Based upon the jury's finding AAA 90% responsible, and C & C 10% responsible, for this latter portion of the damages, any amount over $120,025 paid by C & C was ordered subject to contribution from AAA. *Carpenter v. Automobile Club Interinsurance Exchange*, No. H–C–93–65 (E.D.Ark. Mar. 7, 1994). These appeals and this cross-appeal followed.

## II. DISCUSSION

### A. Appeals

*1. C & C's and AAA's Statute of Limitations Argument*

■ Both appellants argue, and Carpenter agrees, that her bad faith and negligence claims were subject to a three-year statute of limitations, Ark.Code Ann. § 16–56–105. The parties dispute, however, the date upon which her claims accrued for purposes of applying this statute of limitations. If Carpenter's claims accrued prior to June 11, 1990, her action is barred. AAA maintains that Carpenter's claims against AAA accrued upon its failure to settle the Whites' claims before the Whites filed their wrongful death action in state court. C & C maintains that Carpenter's claims against C & C accrued on or about January 21, 1990, the expiration date of the settlement offer expressed in the third letter written by Saxton on behalf of the Whites, dated January 9, 1990.

Carpenter, on the other hand, argues that her claims against AAA and C & C did not accrue until September 3, 1991, when judgment was entered against her in the underlying state court action.

Appellants argue that, under applicable Arkansas case law, a claim accrues for purposes of applying the three-year statute of limitations, when the allegedly wrongful act or omission occurs. Appellants rely on Arkansas decisions involving malpractice claims brought by a client against his or her professional representative. *Smith v. Elder*, 312 Ark. 384, 849 S.W.2d 513 (1993); *Goldsby v. Fairley*, 309 Ark. 380, 831 S.W.2d 142 (1992);

*Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991) (*Chapman*); and *Riggs v. Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984). In response, Carpenter argues that the cases cited by appellants actually demonstrate the correctness of the district court's statute of limitations ruling in the present case. For example, she notes that, in *Chapman*, the Arkansas Supreme Court explained: "[i]n ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action." 817 S.W.2d at 426. Therefore, Carpenter argues, the statute of limitations analysis applied to the facts of *Chapman*, a malpractice case, does not apply to the facts of the present case. Under the "last essential element" test, she argues, accrual may be triggered by something other than the act or omission of which the plaintiff complains. In the present case, she argues, the last essential element was her injury, that is, the entry of judgment in the underlying state court action. In support of her position, Carpenter cites *Stroud v. Ryan*, 297 Ark. 472, 763 S.W.2d 76 (1989) (*Stroud*), also a legal malpractice case. In *Stroud*, the Arkansas Supreme Court focused on the date of the plaintiff's injury. The plaintiff was served with a writ of garnishment on September 27, 1982, which he turned over to his attorney the same day. His attorney failed to respond and the court entered a default judgment against the plaintiff on November 3, 1982. His attorney succeeded in getting the lower court to set aside the default judgment, but the court of appeals reversed the order and reinstated the default judgment on February 19, 1986. After the plaintiff paid the judgment, he sued his attorney for malpractice. The trial court dismissed his petition on statute of limitations grounds. However, the Arkansas Supreme Court reversed, holding that the running of the statute of limitations was tolled during the period that the default judgment was set aside. The Arkansas Supreme Court explained: "[w]e have no hesitation in holding that the running of the statute of limitations was tolled while the default judgment was set aside. During that time, although the alleged negligent act had occurred, Stroud had no claim

against Ryan, as he could have shown no injury." *Stroud,* 763 S.W.2d at 78. Thus, although *Stroud* involved equitable tolling, it is consistent with the proposition that a claim may not accrue until the injury becomes ascertainable.

We agree with Carpenter that, in this bad faith and negligence case, her claims accrued when the last element essential to her claims occurred. We hold, under the facts of the present case, that Carpenter's injury was the last element essential to her claims and that her injury occurred when she became personally liable to the Whites and Giles in the underlying state court action. Thus, accrual occurred on September 3, 1991. To hold otherwise would require insureds who claim bad faith against their carriers to sue before knowing whether the carriers' acts or omissions would result in injury. Also, unlike the cases relied upon by appellants, no policy considerations compel a contrary result. This is not a case in which a defendant has been prejudiced by the loss of evidence or the fading of memory, while a claim languished for several years. *Cf. Chapman,* 817 S.W.2d at 89–90 (discussing policy considerations in malpractice cases; "[t]he problem with delay is that [the defendant's] records or witnesses may no longer be available"). We therefore affirm the district court's denial of appellants' motions to dismiss on statute of limitations grounds.

*2. C & C's Separate Arguments on Appeal*

We next consider C & C's appeal of the district court's denial of various motions for judgment as a matter of law made by C & C during trial. C & C argues that (1) the district court erred in ruling that C & C owed a legal duty to Carpenter upon which her negligence claim may be based; (2) the district court erred in ruling that Carpenter may assert a negligence claim against C & C based upon its alleged nonfeasance under its contract with AAA; (3) the district court erred in ruling that Saxton had legal authority to issue a settlement demand on behalf of the White estate; and (4) the district court erred in ruling that there was substantial evidence to support a finding that Carpenter's damages were proximately caused by

the negligence of C & C. We agree with C & C's argument on the fourth issue. Regardless of whether Carpenter did properly state a negligence claim against C & C, the record clearly demonstrates that there is no substantial evidence to support a finding that C & C's alleged negligence or nonfeasance was the proximate cause of Carpenter's damages arising out of the underlying state court action. Thus, because our holding on this issue disposes of Carpenter's negligence claim against C & C entirely, we need not address the three other issues raised by C & C.

 When federal jurisdiction is premised on diversity of citizenship, a federal district court applies the sufficiency standards of the state in which it sits. *Burke v. Deere & Co.,* 6 F.3d 497, 511 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994). In ruling on C & C's motion for judgment as a matter of law asserting insufficient proof of causation, the district court was therefore required to follow the Arkansas standard. The district court was required to view the evidence in the light most favorable to Carpenter, giving the evidence its highest probative value and taking into account all reasonable inferences which may be deduced from the evidence. *Dorton v. Francisco,* 309 Ark. 472, 833 S.W.2d 362, 363 (1992). If substantial evidence supports a verdict for the non-moving party, then the motion should be denied; substantial evidence is evidence of sufficient force and character that it will compel a conclusion one way or the other and it must induce the mind to pass beyond mere suspicion or conjecture. *Id.* The trial court should grant the motion only if the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside. *Id.* On appeal, we must consider whether there was substantial evidence to support the district court's denial of C & C's motion or, alternatively, whether the district court should have granted the motion because the evidence was insubstantial. *Young v. Johnson,* 311 Ark. 551, 845 S.W.2d 510, 513 (1993) (*Young*) (reversing trial court's denial of the plaintiff's motion for a directed verdict on the defendant's claim of contributory negligence).

■ Proximate cause is defined as a cause which, in a natural and continuous sequence, produces damage without which the damage would not have occurred. *Wheeler v. Bennett,* 312 Ark. 411, 849 S.W.2d 952, 957 (1993). Although the issue of proximate cause is normally a question of fact, the issue should be taken from the jury when the proof is so clear, convincing, and irrefutable that no other conclusion could be reached by reasonable persons. *See, e.g., Young,* 845 S.W.2d at 512–13. We hold in the present case that the record in this case demonstrates that there was no substantial evidence to support a finding that C & C's alleged negligence proximately caused any portion of the excess judgment against Carpenter in the underlying state court action.

■ With respect to the allegation that C & C was negligent in failing to properly forward Saxton's settlement demand to AAA, we entertain no doubt that any failure on C & C's part to do so was not a proximate cause of the excess judgment against Carpenter. Krah, McMullen, and Robert Schreiber were each employed by AAA at all relevant times, and each testified that he was personally involved in the handling of the claims arising out of the 1989 accident. Each testified that he would not have accepted the settlement offer by the end of the ten-day deadline set forth in Saxton's January 9, 1990, letter, even if it had been mailed directly by Saxton to AAA. As each of them explained, the offer would not have been accepted by AAA, even if it had been promptly received, because AAA would not have had sufficient information to evaluate the settlement offer. Thus, any failure on C & C's part to promptly forward the demand to AAA could not have been a proximate cause of the excess judgment against Carpenter in the underlying action.

With respect to the allegation that C & C was negligent in failing to properly investigate the accident, we again hold that there was no substantial evidence in the record to show that this was a proximate cause of Carpenter's damages. Based upon uncontradicted testimony, we find no substantial evidence in the record to support the conclusion that C & C failed to provide AAA with

information it needed to determine that the value of the Whites' wrongful death claim far exceeded Carpenter's policy limits. We further find no substantial evidence to support the conclusion that C & C failed to provide AAA with information it needed to determine that Carpenter was responsible for White's death. Therefore, there was no substantial evidence in the record to show that C & C's alleged negligence in failing to properly investigate the claims proximately caused the excess judgment against Carpenter.

Because the evidence in the record clearly, convincingly, and irrefutably shows that AAA knew early on that the value of the wrongful death claim exceeded Carpenter's policy limits, that AAA had all the information it needed to determine that she was responsible for White's death, and that Saxton's settlement offer contained in his letter of January 9, 1990, would not have been accepted by AAA even if it had been promptly received, there is no substantial evidence to support a finding that C & C's alleged negligence or nonfeasance was the proximate cause of any of Carpenter's damages.

Therefore, we reverse the district court's denial of C & C's motion for judgment as a matter of law on the issue of proximate cause and direct the district court to enter judgment in favor of C & C on Carpenter's negligence claim against it.

### 3. AAA's Separate Arguments on Appeal

■ Next, we take up AAA's argument that, because its policy excluded the recovery of punitive damages, the district court erred in allowing the jury award to stand. We disagree. We acknowledge that the policy excluded coverage for punitive damages, yet we hold that Carpenter is entitled to be made whole, which necessarily requires her to recover the amount of the punitive damages awarded to the Whites and Giles in the underlying state court action. Those damages are part of the *consequential* damages flowing from AAA's alleged bad faith and negligence in handling Carpenter's insurance claims.

In *McChristian v. State Farm Mut. Auto. Ins. Co.,* 304 F.Supp. 748 (W.D.Ark.1969), an

automobile accident caused a number of claims to be asserted against McChristian. His insurer did not settle the claims, and litigation followed. Judgments were entered against McChristian in excess of the policy limits. McChristian sued his insurer for bad faith and negligence in failing to settle the claims. The district court found that the evidence did not establish either bad faith or negligence. However, citing numerous cases from our court and Arkansas, the district court noted: "[w]here an insurer, either through negligence or bad faith, fails to settle a claim against its insured within the policy limits, when it is possible to do so, such insurer is liable to the insured *for any judgment recovered against him (or her) in excess of such policy limits.*" 304 F.Supp. at 750 (emphasis added). As the district court noted in the present case, even though *McChristian* did not involve an award of punitive damages, nothing in that decision suggests that the *McChristian* court's interpretation of Arkansas law would have been different had punitive damages been involved. Slip op. at 3 (Feb. 9, 1994). In fact, *McChristian* suggests that punitive damages *are* recoverable if they are within the underlying excess judgment.

In the present case, Carpenter cannot be made whole unless she is given the opportunity to recover the entire amount of the judgments obtained against her in the underlying state court action, including the punitive damages awards. We do not question that if the Whites had sought execution of their judgment directly against AAA, AAA would only be bound to pay its policy limits for compensatory damages and none of the punitive damages because of the policy's exclusion. Carpenter's complaint against AAA, however, alleges breach of the duty of good faith and negligence, which is a matter of a different order. The jury found that, because of AAA's bad faith and negligence in failing to settle, Carpenter was exposed not only to compensatory damages in excess of the policy limits but also to punitive damages. In sum, the judgment entered by the district court on the jury verdict simply compensated Carpenter for her consequential losses.

Next, we consider AAA's contention that the district court erred in precluding AAA from showing that Carpenter, because of an alleged conditional agreement she had made with her judgment creditors, suffered no harm. According to AAA, this alleged conditional agreement obligated her judgment creditors to permanently forego enforcement of the underlying judgment if she were to diligently pursue her claims against AAA and C & C. The district court found that there was no evidence to support the actual existence of this alleged conditional agreement. Upon careful review of the record, we hold that the district court did not err in reaching this conclusion. All of the witnesses who had any personal knowledge regarding this issue testified unequivocally that Carpenter remained, at all relevant times, liable for the judgments entered against her in the underlying state court action.

AAA further argues that the district court erred in disallowing AAA to introduce evidence of Carpenter's alleged contributory fault and failure to cooperate during the investigation, settlement efforts, and defense of the underlying state court action. AAA argues that Carpenter herself acted in bad faith because she waived the conflict of interest provision of the policy and cooperated with her present attorneys, Nance and Moore, before the underlying action had been affirmed on appeal. In support of its contention, AAA cites *Worden v. Tri–State Insurance Company,* 347 F.2d 336 (10th Cir. 1965) (*Worden*) (applying Kansas law). *Worden* recognizes, and we agree, that an insured's contributory negligence, failure to cooperate, and lack of good faith may constitute valid defenses in actions against an insurer based upon claims of bad faith. *Id.* at 339–40. *Worden* also notes, however, that, to present any such theories to the jury, the insurer must have an evidentiary basis. *Id.* at 340 ("if there is no evidence to support a claim of contributory negligence, it would be error to submit same to the jury"). Here, the district court determined that there was no evidentiary basis to support these defense theories advanced by AAA. The district court found, and we agree, that there was no evidence tending to show that Carpenter failed to do anything that AAA called upon

her to do or that it was somehow prejudiced by Carpenter's association with her retained attorneys.[3]

Finally, AAA's remaining arguments on appeal include the following: (1) the district court erred in denying AAA's motion for a directed verdict on grounds that Saxton lacked authority to tender to AAA a settlement offer to the White estate; (2) the district court abused its discretion in allowing Giles's attorney to testify regarding AAA's handling of the underlying state court action; and (3) the district court erred in denying AAA's motion to compel disclosure of attorney-client communications arising from the underlying state court action. Our examination of the record convinces us that these remaining contentions advanced by AAA lack merit and do not warrant discussion. The judgment against AAA is therefore affirmed.

### B. Cross–Appeal

*1. Punitive Damages*

Carpenter argues, on cross-appeal, that the district court erred in refusing to instruct the jury on her claim for punitive damages. We review this issue *de novo* and consider whether the district court properly followed state law. *Salve Regina College v. Russell,* 499 U.S. 225, 239–40, 111 S.Ct. 1217, 1225–26, 113 L.Ed.2d 190 (1991) (*Salve Regina College*).

■■■ A claim for punitive damages must be submitted to the jury if there is any substantial evidence to support a punitive damages instruction. *Stein v. Lukas,* 308 Ark. 74, 823 S.W.2d 832, 834–35 (1992) (trial court erred in refusing to give instruction on punitive damages). Under Arkansas law, punitive damages are appropriate when the conduct is "malicious, wanton, in violation of a relationship of trust or confidence, or . . . done with a deliberate intent to injure another." *Ray Dodge, Inc. v. Moore,* 251 Ark. 1036, 479 S.W.2d 518, 523 (1972); *see also Robertson Oil Co. v. Phillips Petroleum Co.,* 14 F.3d 373, 377–78 (8th Cir.1993) (en banc),

cert. *denied,* ——— U.S. ———, 114 S.Ct. 2120, 128 L.Ed.2d 677 (1994). The trial court is to apply an objective standard, focusing on whether the defendant knew, or should have known, that, in light of the surrounding circumstances, "its conduct would naturally or probably result in injury and that it continued such conduct in reckless disregard of the circumstances from which malice may be inferred." *HCA Health Servs. v. National Bank of Commerce,* 294 Ark. 525, 745 S.W.2d 120, 125 n. 1 (1988) (hospital could be liable for punitive damages if the plaintiff can show that the defendant hospital knew, or should have known, that its policy would inflict damages but continued that policy anyway, with conscious indifference to the consequences); *see also Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 571 (8th Cir.1988) (under Arkansas law, an award of punitive damages requires showing of either express or inferred malice; inferred malice requires that the defendant knew or should have known of potential harm but proceeded anyway with conscious indifference to the possibility of injury). In *Alpha Zeta Chapter v. Sullivan,* 293 Ark. 576, 740 S.W.2d 127, 132 (1987) (*Sullivan*), the Arkansas Supreme Court went to great lengths to survey its standards for punitive damages. It noted that

> [b]ecause the boundary between gross negligence and conduct that can be characterized as willful and wanton is indistinct, it is necessarily subjective in part. The two-fold intent behind punitive damages is to punish the wrongdoer and to exemplify such conduct for others to note. Negligence alone, however gross, is not enough to sustain punitive damages.
>
> There must be some element of wantonness or such a conscious indifference to the consequences that malice might be inferred. In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless con-

---

**3.** We need not reach the question of whether the breach of an insured's contractual duty to cooperate can be used to comparatively offset the tort liability of an insurer who acts negligently and in bad faith. *See, e.g., Stephens v. Safeco Ins. Co.,* 258 Mont. 142, 852 P.2d 565, 568–69 (1993) (insured's breach of contract may not comparatively offset insurer's liability for tortious conduct; the two "are apples and oranges").

duct on the part of the defendant as is equivalent thereto.

In *Wallace v. Dustin*, 284 Ark. 318, 681 S.W.2d 375 (1984), we stated:

> An award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice might be inferred.... "Before punitive damages may be allowed it must be shown that in the absence of proof of malice or willfulness there was a wanton and conscious disregard for the rights and safety of others on the part of the tortfeasor."

In *National By–Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987), this court vacated an award of punitive damages quoting from *Ellis v. Ferguson*, 238 Ark. 776, 385 S.W.2d 154 (1964):

> Wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortious character, such conduct as manifests a 'disposition of perversity.' Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of danger, with indifference to consequences and with absence of all care....

*Sullivan*, 740 S.W.2d at 132 (citations omitted).

■ While AAA possessed a very slim reed on which to act as it did, we also acknowledge that AAA's private investigator had reported that there was some question as to whether Carpenter was the driver of the automobile at the time of the collision and there was evidence that Giles and White had been drinking at the time of the collision. Moreover, in filing the third-party action against Giles, AAA acted upon advice of its counsel. We also note that Carpenter had told her defense attorney and AAA's representatives that she had had only two or three beers at the time of the accident, the beers had not affected her driving ability, she felt as fresh as if she had just had a good night's sleep on the night of the accident, the motorcycle driven by Giles darted out behind her car in a sudden manner, and she was not at fault. Thus, upon careful review of the record in the present case, we think that there was no substantial evidence to support a finding that AAA acted with wantonness, willfulness, perversity, or reckless disregard for another's rights. Applying the strict Arkansas standards for allowing a punitive damages instruction, we therefore hold that the district court did not err in refusing to submit Carpenter's requested jury instruction on punitive damages.

### 2. Interest on the Judgment Award

■ Finally, we consider Carpenter's appeal of the district court's denial of her request for interest, calculated according to the 10% Arkansas statutory interest rate, as part of her damages. She argues that the district court erroneously failed to include in its damages award compensation for the 10% interest on the principal amount that she currently owes her judgment creditors. *See* Ark. Code Ann. § 16–65–114; *Southern Farm Bureau Cas. Ins. Co. v. Robinson*, 236 Ark. 268, 365 S.W.2d 454, 459 (1963).

We review the district court's ruling on this issue *de novo* and consider whether the district court correctly applied state law. *Salve Regina College*, 499 U.S. at 239–40, 111 S.Ct. at 1225–26. As discussed above, Carpenter is entitled to be made whole to compensate for AAA's tortious conduct. Thus, the damages must compensate Carpenter for the full amount of her personal liability, which is the entire amount of the underlying judgment against her in excess of her policy limits. *See McChristian*, 304 F.Supp. at 750.[4] In *Southern Farm Bureau Cas. Ins.*

---

4. In defining Carpenter's compensatory damages, it is helpful to keep in mind the definition provided by the Restatement (Second) of Torts. Section 903 provides that: "'[c]ompensatory damages' are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him (or her)." *Restatement (Second) of Torts* § 903 (1977). Comment a to § 903 of the Restatement provides, in part, that: "[w]hen there has been harm only to the pecuniary interest of a person, compensatory damages are designed to place him (or her) in a position

*Co. v. Mitchell,* 312 F.2d 485, 501–02 (8th Cir.1963) (*Mitchell*), also involving a claim of bad faith, we affirmed the district court's judgment awarding the plaintiff the very remedy that Carpenter has requested in the present case. In *Mitchell,* the plaintiff, like Carpenter, had not satisfied the underlying judgment and was therefore obligated to pay interest on the underlying judgment. *Id.* The district court ordered the insurance company to satisfy in full the underlying judgment, which included the interest that the plaintiff would be required to pay, and we affirmed. *Id.* at 502. Accordingly, in the present case, we hold that, because the debt that Carpenter owed her judgment creditors remained unpaid at the time judgment in the present case was entered, the district court erred in refusing to include the interest that she would have to pay her judgment creditors, as an element of her damages. She is therefore entitled to interest on the principal amount of the underlying judgment, calculated at a rate of 10% for the period from August 21, 1991, until such date as AAA satisfies its obligations herein.

### III. CONCLUSION

In summary, we hold that the judgment entered in favor of Carpenter and against AAA is affirmed and the total judgment is to bear interest not at the rate of 4.22%, but at the rate of 10%; the judgment entered in favor of Carpenter and against C & C is reversed; and the district court's denial of Carpenter's request for an instruction on punitive damages is affirmed. Accordingly, the judgment is affirmed in part and reversed in part, and the case is remanded to the district court with instructions to enter the proper judgment in accordance with this opinion.

substantially equivalent in a pecuniary way to that which he (or she) would have occupied had

no tort been committed." *Id.* cmt. a.